State of Wisconsin, Ex Rel. Brookside Poultry Farms, Inc., Cross-Appellant and Respondent,

v.

Jefferson County Board of Adjustment, Respondent.

State of Wisconsin, Ex Rel. Town of Farmington and Robert Haas, Lester Reichert, Robert Weissmann, and Robert Braun, Petitioners,

v.

Rev. Dr. Steven Fossum, Jerry Messman and Phyllis Hagen and the Concerned Citizens of Farmington, Jeannette Latsch, Hildegard Will, Eugene Werner, Pearl Werner, Delores Messman, Collin Simmons, Janice Simmons, Marvin Wolechka, Rosalee Wolechka, Robert Weber, Harold Wright, Donald Miller, Laura Miller and Duane Cook, Appellants and Cross-Respondents,

v.

Jefferson County Board of Adjustment,† Respondent.

Court of Appeals

No. 83–1134. Submitted on briefs April 23, 1985.— Decided July 11, 1985.

(Also reported in 373 N.W.2d 450.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

388

For the appellants and cross-respondents the cause was submitted on the briefs of *Raymond E. Krek* and *Gerald A. Friederichs* and *Krek, Ebbott & Friederichs, S.C.* of Jefferson.

For the cross-appellant and respondent the cause was submitted on the briefs of *Robert D. Sundby* and *DeWitt, Sundby, Huggett, Schumacher & Morgan, S.C.* of Madison.

Before Gartzke, P.J., Dykman, and Eich, JJ.

EICH, J.   Both parties, Brookside Poultry Farms and a Jefferson County citizens group, appeal from an order of the trial court modifying an order of the Jefferson County Zoning Board of Adjustment. The zoning and planning committee of the Jefferson County Board of Supervisors issued a conditional use permit to Brookside authorizing construction of a 240,000-hen egg-laying facility in the Town of Farmington. A group of area residents appealed to the board of adjustment and, after a *de novo* hearing, the board modified the permit, limiting Brookside to an 80,000-hen facility. The trial court modified the board's order to permit construction of facilities for 160,000 hens.

The issues are: (1) whether the area residents had standing to appeal the committee's action to the board of adjustment; (2) if so, whether the appeal was timely; (3) whether Brookside possessed vested rights in the original permit which would estop the board from modifying it; and (4) whether the trial court erred in modifying the board's order.

We conclude that the residents had standing, that their appeal to the board of adjustment was timely, and that the board was not estopped from modifying the

original permit. We also conclude that the trial court, in making its own modification, erroneously substituted its judgment for that of the board. We therefore reverse and remand to the trial court with directions to enter an order affirming the board's decision.

## I. STANDING

Brookside argues that because the residents were not parties to the zoning committee proceedings, they were not "aggrieved persons" within the meaning of sec. 59.99 (4), Stats., and thus lacked standing to appeal the committee's issuance of the permit. The statute provides an appeal from the zoning committee to the board to "any person aggrieved" by the committee's decision. The residents were aggrieved by the decision within the meaning of the statute. One is aggrieved by an administrative decision when that decision has a direct effect on his or her legally protected interests. *Kammes v. Min. Inv. & Local Impact Fund Bd.*, 115 Wis. 2d 144, 151, 340 N.W.2d 206, 210 (Ct. App. 1983). The trial court, after taking evidence on the point, held that the residents were aggrieved because of the effect a large egg-laying facility would have on their property interests, and that conclusion is supported by the record.

Brookside argues, however, that *State ex rel. Hynek & Sons Co. v. Board of Appeals*, 267 Wis. 309, 64 N.W. 2d 741, *vacated on reh'g*, 267 Wis. 315a, 66 N.W.2d 623 (1954), and *Sohns v. Jensen*, 11 Wis. 2d 449, 105 N.W. 2d 818 (1960), compel the conclusion of no standing. *Hynek*, like the instant case, involved a zoning appeal taken by a group of neighboring landowners to the local board of appeals. The court's discussion of standing, however, was limited to an acknowledgement of the respondent's contention that the landowners could not ap-

peal from the building inspector's decision "because they were not parties to the proceedings before him," followed by the court's statement: "We consider the record and the terms of the ordinance and rules of procedure support the argument and we adopt the theory . . . ." *Hynek,* 267 Wis. at 313–14, 64 N.W.2d at 743. The court concluded that because the city, not the landowners, conducted the proceedings before the board, the appeal should be considered as having been brought by the city in its own capacity. Thus, the court's reference to the landowners' standing is dicta. Even if the statement could be read as authority for Brookside's position, we note that the court withdrew its decision on rehearing and proceeded to reverse itself without reference to the landowner's standing to appeal. *Id.* at 315g, 66 N.W.2d at 627.

*Sohns* is no more persuasive. Contrary to Brookside's assertion, that case does not hold that an adjoining landowner who was not a party to proceedings before a county planning commission can never appeal the commission's decision to the board of adjustment. *Sohns* holds only that he or she is not *required* to do so in order to preserve the right to sue for injunctive relief under what is now sec. 59.97(11), Stats.

The trial court ruled that the residents were not chargeable with knowledge of the zoning committee's decision until Brookside started construction activities after the permit was issued. It makes little sense to say that area landowners, aggrieved by the committee's decision, but lacking any knowledge of the proceedings before the committee, must have participated in those proceedings in order to have standing to appeal to the board of adjustment.

The trial court correctly concluded that the residents had standing to appeal even though they were not parties to the proceedings before the committee.

## II.  TIMELINESS OF THE APPEAL

Under sec. 59.99 (4), Stats., and the applicable zoning ordinance, Jefferson County, Wis., Ordinance 11.11 (d) 1 (Dec. 10, 1974), an appeal to the board of adjustment must be taken "within a reasonable time, as provided by the rules of the board, . . ."  The board had not established a time limitation for appeal at the time this action was begun.  The committee issued the initial permit for the 240,000-hen facility on May 15, 1980.  On August 28, 1980, the residents filed their appeal with the board.

After holding an evidentiary hearing, the trial court found the following facts.  There had been no public notice relating to the zoning committee's issuance of the conditional use permit, and Brookside received a building permit for the first stage of the facility, an 80,000-hen house, on July 9, 1980.  Some preliminary staking was done on the site on July 11, and from July 23 to August 4 various site preparation work was undertaken, including the movement of large amounts of dirt and the cutting of a driveway.  From time to time, the work involved the use of large, noisy machinery.  The trial court also found that until August 18, 1980, when the concrete foundation slab was poured, all of Brookside's activity on the site was consistent with permitted use of the property under its existing agricultural zoning classification.

The findings are not clearly erroneous.  The trial court concluded that: (1) the time for taking the appeal runs from the time the residents had actual or constructive knowledge of the permit; (2) August 18, 1980, was the date on which the residents were deemed to have had constructive notice of the issuance of the permit; and (3) the appeal, filed ten days later, was taken within a reasonable time thereafter.  These are conclusions of law. *Wassenaar v. Panos,* 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983).  We review them *ab initio,* with-

out deference to the trial court's determinations. *De Pratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d 883, 885 (1983). The underlying facts found by the trial court are, however, accepted on appeal unless clearly erroneous. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983).

Brookside argues first that the residents should be held to notice at a much earlier date because advance notice of the zoning committee hearing on Brookside's permit application was published in two area newspapers. The notice read: "CU–180 resubmitted by Brookside Systemation Inc. to establish a poultry house for 500,000 layer hens on parcel 07–15–29–32 Town of Farmington." Copies were sent to two area residents, both of whom are appellants in this action. The notice, however, is nonspecific; it refers to the property only by parcel number. Citizens should not be required to search the administrative records to determine whether their interests might be affected by a governmental action. *Sohns*, 11 Wis. 2d at 455, 105 N.W.2d at 821.

Constructive notice is a fiction; it is neither notice nor knowledge. Rather, for reasons of policy, we attribute constructive notice of a fact to a person and treat his or her legal rights and interests as if there was actual notice, even though in fact there may be none. *Uhrman v. Cutler-Hammer, Inc.*, 2 Wis. 2d 71, 75, 85 N.W.2d 772, 774 (1957). In *Zdunek v. Thomas*, 215 Wis. 11, 15, 254 N.W. 382, 383 (1934), the court stated:

It is a general rule of law . . . that whatever fairly puts a person on inquiry with respect to an existing fact is sufficient notice of that fact if the means of knowledge are at hand. If under such circumstances one omits to inquire, he is then chargeable with all the facts which, by proper inquiry, he might have ascertained. . . .

. . . . .

"A person has 'reason to know' a fact when he has such information as would lead a person exercising rea-

sonable care to acquire knowledge of the fact in question or to infer its existence."

In this case there was nothing in either the earlier newspaper notices nor in Brookside's on-site activities prior to August 18, 1980, that would put a prudent person on inquiry that a conditional use permit for a large egg-laying facility had been issued. All the work done prior to that date was, as the trial court found, consistent with permitted use of agriculturally-zoned property. We conclude that August 18, when the concrete foundation slab was poured, was the date upon which the residents had constructive notice that Brookside had received the permit.

Brookside argues, however, that the appeal time runs from the date the permit was issued, not from the date of notice to the residents, whether actual or constructive, citing *State ex rel. Cities S.O. Co. v. Bd. of Appeals*, 21 Wis. 2d 516, 531–32, 124 N.W.2d 809, 817 (1963). Our reading of that case indicates that the court never addressed the issue.

Other courts considering the question under similar statutes and ordinances have held that the time for appeal runs from such time as the appellant acquires actual or constructive notice of the issuance of the permit— provided there is no element of laches or undue delay present. *State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles County Board of Adjustment*, 553 S.W.2d 721, 725 (Mo. Ct. App. 1977) ; *Cave v. Zon. Bd. of App. of Vil. of Fredonia*, 373 N.Y.S.2d 932, 935 (1975) ; *Hardy v. Zoning Bd. of Review of Town of Coventry*, 321 A.2d 289, 291 (R.I. 1974) ; *Pansa v. Damiano*, 200 N.E.2d 563, 565 (N.Y. Ct. App. 1964).

One securing a zoning change or permit has a clear interest in the finality of the administrative act so that work on the planned project can proceed without fear of delay or interruption. The interests of affected or ag-

grieved neighbors in avoiding threatened interference with their property rights are no less important, however, and striking an appropriate balance between these interests can be difficult:

Clearly, when a landowner has been granted a permit to make a particular use of his land, he is entitled to know when that decision will become final and no longer be subject to review or reversal by the board. Only in such circumstance may such a landowner feel secure in putting the land to the use granted him by the permit. It is equally true that those who object to the granting of a permit are entitled to know within what period of time they must appeal once they have acquired knowledge of the action or decision they desire to challenge.

*Hardy,* 321 A.2d at 292. It is doubtful that these two objectives could be attained under any uniform, hard-and-fast rule. The competing interests must be weighed in each case, and it is the duty of courts to construe statutes reasonably so as not to deprive citizens of important rights.

On the facts of this case, we conclude that: (1) the time for appeal to the board of adjustment did not begin to run until the appellants had actual or constructive notice of the issuance of the permit; (2) the residents had constructive notice of the issuance of the permit on August 18, 1980; and (3) the appeal, filed ten days later, was timely.

### III.  ESTOPPEL

Brookside argues that it had a vested right in the permit issued by the committee and that once it commenced the permitted construction, the board was estopped from interfering in any way with that construction. The trial court rejected the argument, stating:

If a permittee may, by proceeding to expend substantial sums and make substantial improvements in reliance on a permit before the time to appeal the issuance of that permit to the zoning board of appeals has expired, foreclose the board from acting on a timely appeal, statutory law relating to appeals to county zoning boards of adjustment might as well be abolished.

We agree.

## IV.  MODIFICATION  OF  THE  BOARD'S  ORDER

In certiorari proceedings at common law the reviewing court determines only: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *State ex rel. Ruthenberg v. Annuity & Pension Bd.*, 89 Wis. 2d 463, 472, 278 N.W. 2d 835, 840 (1979). Brookside argues that the standard is much broader in "statutory certiorari" proceedings such as those authorized in sec. 59.99(10), Stats., and that the trial court's modification of the board's order may not be set aside unless it is contrary to the great weight and clear preponderance of the evidence.

*Browndale International v. Board of Adjustment*, 60 Wis. 2d 182, 208 N.W.2d 121 (1973), cited by Brookside in support of its argument, does no more than make the following points: (1) under sec. 59.99, Stats., the trial court may, in its discretion, "take additional testimony and other evidence and make findings of fact and conclusions of law" and then may "reverse or affirm, wholly or partly, or may modify the decision brought up for review"; and (2) where the court does so, and where it bases its decision on its own findings of fact after a *de novo* hearing, that decision will be affirmed if the underlying findings are not against the great weight and

clear preponderance of the evidence, *id. at* 194, 199, 208 N.W.2d at 127, 130—that is, if they are not clearly erroneous. *Noll,* 115 Wis. 2d at 643, 340 N.W.2d at 577. Here, the trial court did not take any evidence on the merits of the board's decision. Consequently, we review the record and the board's decision under the traditional standards of certiorari review.

Basically, the board concluded: (1) that the nature and volume of the traffic generated by a 240,000-bird facility would pose a threat to public health and safety; and (2) that an 80,000-bird facility would not cause odor or create disposal problems, but the board was "unable" to reach similar conclusions with respect to a 240,000-bird operation. Taking these conclusions, which, unfortunately, were phrased by the board in double negatives, the trial court determined that there must be a "range of reasonableness" between the two figures and, in essence, split the difference. After concluding, as did the board, that a 240,000-bird facility would be harmful to the various stated interests and that an 80,000-bird facility would not, the court ruled that it was arbitrary and unreasonable for the board to choose the latter, rather than some point in between. The appropriate in-between point, according to the trial court, would be a 160,000-bird facility, and the board's order was modified accordingly.

The board's findings and conclusions should be affirmed if they are supported by any reasonable view of the evidence. *State ex rel. Morehouse v. Hunt,* 235 Wis. 358, 367, 291 N.W. 745, 749 (1940) ; *Snyder v. Waukesha County Zoning Board,* 74 Wis. 2d 468, 476, 247 N.W.2d 98, 103 (1976). And, if there is more than one reasonable view of the evidence, the board may choose among them, and its choice will not be upset by a reviewing court. *Bucyrus-Erie Co. v. ILHR Department,* 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979).

The board heard extensive testimony on the truck and equipment traffic that would be generated by a 240,000-hen operation—as many as fifty-nine trips per day would be made by tractors, trucks and manure spreaders over narrow, hilly, curving, shoulderless roads—and concluded that such traffic could create a health and safety hazard in the area. Its companion conclusion that an 80,000-bird facility would not pose such dangers is, on this record, reasonable. The same may be said for the findings and conclusions relating to odor nuisance and waste disposal problems. The board's findings on both issues are supported by substantial evidence in the record, and the conclusions drawn from those findings are not unreasonable.

While the trial court generally agreed with the board's basic findings and conclusions, it ruled as follows:

> While the Court is of the opinion that the Board could properly modify the Permit to provide for an operation of fewer than the 240,000 bird request of Brookside based on its conclusions . . . it is of the further opinion that it was unreasonable and arbitrary of the Board to scale the Permit so far down as to permit but an 80,000-bird usage.
>
> As Brookside was doing its bird housing in 80,000 bird units would it not have been reasonable and not arbitrary to have scaled the program down to one for 160,000 fowl?

By modifying the board's decision as it did, the court improperly substituted its own judgment for that of the board. *Snyder,* 74 Wis. 2d at 476, 247 N.W.2d at 103. We therefore reverse and direct reinstatement of the board's decision and order authorizing construction of an 80,000-hen facility.

*By the Court.*—Order reversed and cause remanded to the trial court with directions to enter an order af-

firming the decision of the Jefferson County Board of Adjustment.[1]

---

[1] The appellants moved to strike the respondent's cross-reply brief on grounds: (1) that it was not timely filed; and (2) that it contained material not properly includable in a reply brief.

Because we perceive no prejudicial effect flowing from receipt and consideration of the brief, we need not reach the merits of the motion and deny it without costs.

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.