STATE of Wisconsin EX REL. BROOKSIDE POULTRY FARMS, INC., Cross-Appellant and Respondent-Petitioner,

v.

JEFFERSON COUNTY BOARD OF ADJUSTMENT, Respondent.

STATE of Wisconsin EX REL. TOWN OF FARMINGTON and Robert Haas, Lester Reichert, Robert Weissmann and Robert Braun, Petitioners,

Rev. Dr. Steven FOSSUM, Jerry Messman and Phyllis Hagen and The Concerned Citizens of Farmington, Jeanette Latsch, Hildegard Will, Eugene Werner, Pearl Werner, Delores Messman, Collin Simmons, Janice Simmons, Marvin Walechka, Rosalee Walechka, Robert Weber, Harold Wright, Donald Miller, Laura Miller and Duane Koch, Appellants and Cross-Respondents,

v.

JEFFERSON COUNTY BOARD OF ADJUSTMENT, Respondent.

Supreme Court

*No. 83–1134. Argued June 3, 1986.—Decided June 23, 1986.*

(Also reported in 388 N.W.2d 593.)

101

For the cross-appellant and respondent-petitioner there were briefs by *Robert D. Sundby* and *DeWitt, Sundby, Huggett, Schumacher & Morgan, P.C.,* Madison, and oral argument by *Robert D. Sundby.*

For the appellants and cross-respondents there was a brief by *Raymond E. Krek, Gerald A. Friederichs* and *Krek, Ebbott & Friederichs,* Jefferson, and oral argument by *Raymond E. Krek.*

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *State of Wisconsin ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Board of Adjustment,* 125 Wis. 2d 387, 373 N.W.2d 450 (Ct. App. 1985), reversing an order of the circuit court for Jefferson county, David L. Dancey, reserve judge. The circuit court modified an order of the Jefferson County Zoning Board of Adjustment which had authorized Brookside Poultry Farms, Inc. to construct an 80,000-hen facility. The circuit court permitted construction of facilities for 160,000 hens. The court of appeals reversed the order of the circuit court and remanded the cause to the circuit court to reinstate the Board of Adjustment's authorization of the construction of an 80,000-hen facility. We affirm the decision of the court of appeals.

This case raises the following issues: (1) Was the Board of Adjustment equitably estopped from interfering with the permit granted to Brookside Poultry? (2) May persons who were aggrieved by the action of the Planning and Zoning Committee of the Jefferson County Board of Supervisors but who did not appear at the Committee's hearings appeal the Committee's action to the Board of Adjustment? (3) Was the appeal to the Board of Adjustment filed timely? and (4) What

104

is the circuit court's standard of review of the order of the Board of Adjustment and did the circuit court err in modifying the order?

## I.

The relevant facts for the first three issues relate to the procedural history of the case. The following statement of the steps by which Brookside Poultry obtained authorization for the construction of the facilities is undisputed.

Brookside Poultry conducts a hen-raising operation in the Town of Aztalan and seeks to start such an operation in the Town of Farmington. All the land is located in Jefferson county and is zoned A-1, a zone permitting primarily agricultural uses as principal uses. If a poultry operation houses more than 10,000 hens, a conditional use permit is required.

On January 2, 1980, Brookside Poultry applied to the Planning and Zoning Committee (Committee) of the Jefferson County Board of Supervisors for a conditional use permit (designated CU-1-80) to construct a 60,000-hen facility on its land in the Town of Farmington. The Committee published notice on February 6 and February 18, 1980, that it would hold a public hearing on this application on February 28, 1980. At that hearing Brookside Poultry sought to increase the capacity of the facility beyond 60,000 hens. The Committee informed Brookside Poultry that the conditional use permit would have to specify exactly what the expansion would involve. On March 5, 1980, Brookside Poultry resubmitted its application, this time seeking to construct facilities for 500,000 hens.

A public hearing to discuss this expansion was set for March 27, 1980. Notices of this hearing were published on March 6 and March 17, 1980, and copies of the notices were mailed to owners of the adjoining property. No one voiced opposition to the construction at this meeting.

At the next regular Committee meeting on April 3, 1980, the resubmitted application was tabled until May 15, 1980, to give the Town of Farmington board an opportunity to express its views. In a letter dated May 7, 1980, the Town of Farmington board gave approval for the construction of three buildings—two to house 80,000 layer hens each and one for processing eggs. On May 15, 1980, the Committee approved the conditional use application for the construction of these three buildings.

The Jefferson county zoning administrator issued a building permit on July 9, 1980, allowing Brookside Poultry to construct one building for 80,000 hens and on August 28, 1980, to construct the other buildings. Preliminary site and excavation work on the Farmington site began during the last two weeks of July 1980; the concrete foundation slab was poured on August 18; and the foundation and frame for the first housing unit were completed on August 28.

On August 28, 1980, after construction had begun, 73 persons (Residents) appealed to the Jefferson County Board of Adjustments (Board) the Committee's decision to grant Brookside's conditional use permit (CU–1–80). Brookside Poultry moved to dismiss the appeal on the grounds that the Board was equitably estopped from interfering with the permit, that the Residents were not persons aggrieved and therefore could not file an appeal, and that the appeal was not filed on

time. On October 31, 1980, the Board denied Brookside's motion to dismiss the appeal.

The Board conducted the appeal as a contested case hearing and ordered the parties to present their cases as if the appeals were *de novo* proceedings.[1] The Board issued written findings of fact and conclusions of law and modified the permit to authorize Brookside Poultry to construct an 80,000-hen facility.

In March 1981, both Brookside Poultry and the Residents petitioned the circuit court for Jefferson county for a writ of certiorari to review the order of the Board. Both petitions were consolidated for hearing before Judge David Dancey.

The circuit court issued findings of fact, conclusions of law and an order modifying the Board's order. As a result of the circuit court's order, Brookside Poultry was permitted to construct and operate two buildings at the Farmington site, each housing 80,000 hens. The Residents appealed the circuit court's order to the court of appeals and Brookside Poultry cross appealed.

The court of appeals reversed the order of the circuit court and remanded the cause to the circuit court to reinstate the order of the Board. Brookside Poultry sought review in this court.

---

[1] The parties stipulated that the record from the Board's hearing on Brookside Poultry's application to expand facilities on the Aztalan property (CU–10–80) would become part of this hearing record. On July 3, 1980, Brookside Poultry applied to the Committee for a conditional use permit to construct housing for 170,000 hens at the Town of Aztalan parcel. The Committee granted the permit (CU–10–80) on August 5, 1980 and the Town of Aztalan appealed to the Board.

.

## II.

██ Brookside Poultry argues that the Board was estopped "to substantially interfere with the exercise of rights which vested in Brookside's valid conditional use permit," even if the Residents have the right to appeal the Board's decision. (Brief p. 7) It is not clear which action Brookside Poultry asserts the Board is estopped from taking: enjoining the construction of the facility, hearing the appeal from the Committee's decision, or modifying the permit.

Brookside Poultry bases its equitable estoppel argument on *State ex rel. A. Hyneck & Sons Co. v. Board of Appeals,* 267 Wis. 309, 64 N.W.2d 741, vacated on reh'g, 267 Wis. 315a, 66 N.W.2d 623 (1954). The court "withdrew the decision" after reargument and vacated the original mandate (267 Wis. at 315c, 315g). The precedential value of this decision is dubious.[2]

In any event, the *Hyneck* decision does not support Brookside Poultry's position in this case. The facts of *Hyneck* and this case are significantly dissimilar. In *Hyneck,* neighbors protested the issuance of a building permit to the zoning board. The protest was not, however, filed within the appeal period. Nevertheless the board conducted a hearing. The board acted *sua sponte,* not on an appeal initiated by the neighbors. In this case the Board acted on an appeal by the neighbors.[3]

---

[2] *Hyneck* has been cited a number of times by this court. We need not decide the precedential value of a decision subsequently withdrawn by the court because we give no weight to the *Hyneck* decision here.

[3] A further distinction can be made between *Hyneck* and this case. In *Hyneck* it appears that the permittee had good reason to

The *Hyneck* court held that the board was estopped from revoking a permit *sua sponte* after the permittee, relying on the permit, expended substantial sums of money. *Hyneck* does not support the proposition that Brookside Poultry urges this court to adopt, namely that the Board is estopped from interfering with the exercise of rights under a conditional use permit which was subject to appeal. If *Hyneck* has any precedential value, the holding of the case applies only when a board seeks to revise a permit on its own motion after the appeal time has elapsed.

Brookside Poultry asserts that the appeal rights of others are irrelevant to the issue of equitable estoppel. It argues that equitable estoppel is a matter that concerns it and the Board and that the interests of the Residents are not harmed if the Board is estopped because the Residents can pursue their objections through other avenues. According to Brookside Poultry, the Residents can seek an injunction under sec. 59.99(4), Stats. 1983–84, or can sue Brookside Poultry for creating a nuisance.

We reject this argument. If we were to accept Brookside Poultry's argument that reliance by a permittee forecloses the Board from substantially interfering with the permit during an appeal, the appel-

believe that because the appeal time had expired the permit was final and could be relied upon. Typically equitable estoppel is claimed when the action or inaction of one party induces reasonable reliance to another party's detriment. *Kohlenberg v. American Plumbing Supply Co.,* 82 Wis. 2d 384, 396, 263 N.W.2d 496 (1978). In this case, Brookside Poultry knew or should have known that there was a question of whether appeal rights had expired. Under these circumstances, unlike in *Hyneck,* it is not clear that Brookside Poultry could reasonably rely on the permit.

lants' interests on appeal might be jeopardized. As the circuit court stated:

"If a permittee may, by proceeding to expend substantial sums and make substantial improvements in reliance on a permit before the time to appeal the issuance of that permit to the zoning board of appeals has expired, foreclose the board from acting on a timely appeal, statutory law relating to appeals to county zoning boards of adjustment might as well be abolished."

We agree with the circuit court and the court of appeals in refusing to recognize Brookside Poultry's claims of equitable estoppel.

### III.

Brookside Poultry asserts that the Residents have no standing to appeal the Committee's decision to the Board. Section 59.99(4), Stats. 1983–84, provides that "appeals to the board of adjustment may be taken by any *person* aggrieved. . . ." (Emphasis added.) *See also* Jefferson County Zoning Ordinance sec. 11.11(1)(d). Brookside Poultry does not contend that the Residents are not "aggrieved" within the meaning of the statute and ordinance. Brookside Poultry asserts that the Residents cannot take an appeal to the Board because they were not *parties* in the hearings before the Committee.

Although the statute and ordinance both speak in terms of persons rather than parties, Brookside Poultry urges us to treat these words as synonyms. While Brookside Poultry relies on language in the *Hyneck* case and *Sohns v. Jensen,* 11 Wis. 2d 449, 105 N.W.2d 818 (1960), to support its position, it acknowledges that

110

these cases are distinguishable from this case. We agree that these cases are distinguishable.

In *Hyneck,* the time for appeal had passed when property owners filed a letter of protest with the Racine Board of Appeals. The Racine Board of Appeals' brief in the supreme court insisted that the board's proceeding was not an appeal proceeding but a *sua sponte* proceeding held under other provisions of the law. The Racine board's brief asserted that the property owners "could not appeal [to the board] from the decision of the building inspector because they were not parties to the proceeding before him," 267 Wis. at 313. The court, after explaining at length the Racine board's argument that the proceeding before the board was not an appeal by the property owners but "something else," went on to say that "the record and the terms of the ordinance and rules of procedure support the argument and we adopt the theory, but it necessarily excludes consideration of the individual rights of the objecting property owners, removes them as parties to the proceeding and restricts the review by the Board of Appeals to the *city's* right to revoke the permit granted by its building inspector." (267 Wis. at 314)

It is not entirely clear what theory the *Hyneck* court was adopting—that the property owners were not persons aggrieved because they were not parties to the previous proceedings, or, as Brookside Poultry suggests, that under the law cited the board could review an administrative decision even though no appeal was pending. We think the latter. *Hyneck* is, as Brookside Poultry recognizes, limited to the record presented to the court and the applicable laws.

We conclude also that *Sohns* does not support Brookside Poultry's contention that the Residents lack

standing. In *Sohns,* the court rejected the permittee's argument that the property owners' appeal to the circuit court was improper because the owners had failed to exhaust their administrative remedies—namely, they failed to appeal an administrative decision to the zoning board of appeals. Brookside Poultry relies on the following language in *Sohns:* "We cannot hold that the plaintiffs were aggrieved persons within the meaning of the ordinance and a determination made by an administrative officer from which the plaintiffs were required to appeal . . . An adjoining or nearby property owner who has no notice of an administrative order, has no knowledge of such order, and has not participated in the proceedings resulting from the order, cannot be deemed to be an aggrieved party who is required to appeal within the meaning of the zoning ordinance." (11 Wis. 2d at 455.)

When these sentences are read in the context of the entire opinion, it is clear that the *Sohns* court did not hold that property owners are precluded from appealing an administrative decision if they were not parties in the administrative proceeding. The *Sohns* court concluded that under the circumstances of that case the administrative decisions which the plaintiffs were challenging in court were not subject to administrative review procedures which had to be exhausted before the plaintiffs sought judicial relief. *Sohns* did not limit access to judicial review; it expanded access.

These two cases do not persuade us to adopt the position Brookside Poultry urges. Brookside Poultry's principal argument is not grounded on either case but is grounded on a sense of fairness. Brookside Poultry argues that it is unfair to force it to defend its position before the Board when the Residents failed to voice

their objections in the initial hearings on the permit before the Committee. It is not for this court to evaluate whether allowing the Residents to appeal to the Board is fair or unfair to Brookside Poultry. The statute and ordinance clearly state that *persons* aggrieved, not *parties* aggrieved, have a right to appeal. This court applies the law as written.

## IV.

Having decided that the Residents have standing to sue, we now consider Brookside Poultry's claim that the appeal was not filed on time. Section 59.99(4), Stats. 1983–84, provides that an "appeal [to the Board of Adjustment] shall be taken within a reasonable time, as provided by the rules of the board. . . ." The Jefferson County Zoning Ordinance copies sec. 59.99(4) and similarly provides that an "appeal to the board of adjustment shall be taken within a reasonable time, as provided by the rules of the Board. . . ." Section 11.11(d) 1., Jefferson County Zoning Ordinance. Unfortunately, however, at all times pertinent to this case, no rules had been adopted setting a reasonable appeal period. Consequently in determining the timeliness of the appeal, the court must consider two questions of law which may be decided without deference to decisions of the circuit court or court of appeals: (1) At what date did the appeal period commence? (2) What was a reasonable length of time during which the appeal could be filed?

Brookside Poultry apparently argues that the appeal period commences when the persons eligible to appeal had notice that the Committee issued the condi-

tional use permit. The circuit court and court of appeals held that the time for taking the appeal commenced when the Residents had notice that the Committee issued the permit.

We hold that the time for taking the appeal to the Board began when the Residents had notice that the conditional use permit had been issued. It is only reasonable to begin the appeal period when the appellant acquires notice of the event from which the appeal is taken.[4]

The harder question to answer is, When did the Residents acquire notice that the permit had been issued? In this case the Committee issued the permit on May 15, 1980, but no notices that the permit had been issued were published and no notices were personally served.

A person has notice of a fact under four circumstances: if he or she (1) knows the fact, or (2) has reason to know it, or (3) should know it or (4) has been given notification of it. To know means to be aware. Reason to know of a fact means that a person has information from which a person of ordinary intelligence would infer that the fact in question exists or would act assuming that the fact exists. A person should know of

---

[4] The court of appeals noted, 125 Wis. 2d at 394, that several courts have held that the time for appeal commences on the day that the appellant receives notice of the issuance of the permit—provided there is no element of laches or undue delay present. *See State ex. rel. Green's Bottom, Inc. v. St. Charles County Board of Adjustment*, 553 S.W.2d 721, 725 (Mo. 1977); *Cave v. Zon. Bd. of Review of Town of Coventry*, 321 A.2d 289, 291 (R.I. 1974); *Hardy v. Zoning Bd. of Review of Town of Coventry*, 321A2d 289, 291 (R.I. 1974); *Pansa v. Damiano*, 200 N.E.2d 563, 565 (N.Y. Ct. App. 1964).

a fact if a person of ordinary intelligence would ascertain, in the performance of a duty to another, that the fact exists or would act assuming the fact exists. Notification is a juristic act which determines the rights of the parties. Whether or not the doing of a specific act is notification of a fact in a particular case depends upon the special rules made applicable to the situation to promote sound policy. See Restatement (Second) of Agency sec. 9 (1958); sec. 401.201, Stats. 1983–84 (Uniform Commercial Code).[5]

Brookside Poultry contends that the Residents had notice of the issuance of the permit as of the date it was issued because there had been published notices of the hearings before the Committee. In addition, Brookside Poultry had personally served notices of the hearings on the town clerk and town chairman and had mailed notices to the adjoining property owners. Brookside Poultry contends that these written notices advised property owners of possible future construction in the area that might significantly affect their interests. Such information would, according to Brookside Poultry, lead reasonable persons to acquire information about all subsequent proceedings. They are held to know what they would have found on inquiry, that is, that the permits were issued. Brookside Poultry concludes that the Residents had notice of the issuance of the permit on May 15, 1980, the day of issuance, and that because the Residents did not file their appeal

---

[5] The terms "notice," "know" and "notification" are often used in the law. The decisional law, however, is not always consistent in its use of these terms. The term "constructive notice" is sometimes used in the cases to mean "reason to know," "should know," and "notification."

until more than three months had elapsed, the appeal was not timely.

The circuit court and the court of appeals concluded, however, that the published notices of the hearings do not constitute notice of the issuance of the permit on August 18, 1980, when the concrete slab was poured.[6] Because the Residents filed the appeal 10 days thereafter, the courts held that the appeal was filed within a reasonable time.

In determining what event gave the Residents notice of the issuance of the permit, we must consider the interests of Brookside Poultry, the Residents and the public. Brookside Poultry's interest is to start construction promptly. It wants the appeal period to start at the earliest possible date so that the appeal period ends as soon as possible after the administrative decision is made. Brookside Poultry's interest therefore is to have notice of the issuance of the permit occur on the date of the issuance. The Residents' interest is in protecting the use and enjoyment of their property from the deleterious use by neighbors of their property. They are interested in having the appeal period commence when they know of the administrative decision so that they have the opportunity to consider action. The public interest is to promote and protect the rights of all property owners to develop their respective properties in a manner beneficial to the property owners and not harmful to society. The public's interest is to ensure that all parties have a day certain on which the appeal

[6] The circuit court had found that Brookside Poultry's work on the premises before the slab was poured was consistent with the permitted use of the property under the existing zoning classification. This finding of fact is not clearly erroneous and will not be set aside on appeal.

116

is to commence, that Brookside Poultry is given a final decision within a reasonable time and that the Residents have a fair opportunity to appeal.

■

Considering the interests of the parties and the public, we conclude that the Residents had notice of the issuance of the permit by reason of the construction, not by reason of the published notices of the hearings. It may be that in some circumstances published notices of the first step of an administrative procedure may be considered notification of the last step, but we are not persuaded that this approach is sound in this case. Even if the published notices of the hearings alerted property owners of the nature and place of the requested construction (and the parties dispute the efficacy of the notice of the hearings in this case), the Residents may have had difficulty getting information about the proceedings and keeping up with the adjournments and hearings. Furthermore if many people were attempting to get information over the several months of proceedings there might be a significant burden on the government officials. Instead of requiring the Residents to follow the Committee's proceedings to determine when the permit is issued, it makes more sense to require the Committee or Brookside Poultry to advise the Residents when the Committee takes affirmative action on the application for a permit. It would have been relatively easy for the Committee or Brookside Poultry to inform the Residents that the permit had been issued.

We hold that Brookside's commencement of construction of the facilities constituted notification to the Residents that the permit had been issued. The time to appeal began on the date of commencement of con-

struction. The parties do not dispute that filing an appeal within 10 days after notice of the issuance of the permit is a filing within a reasonable time period.

Brookside Poultry contends that commencing the appeal period at the time at which construction began is unfair because it made an major investment in reliance on the permit.

We are sympathetic to Brookside Poultry's predicament. The problem in this case was created in large part by the failure to promulgate appropriate rules governing the appeal to the Board as directed by 59.99(4) and the zoning ordinance. Nevertheless, by seeking the intervention of the zoning authorities Brookside Poultry more than the Residents should have been aware that there was a question about when appeal rights expired. Before it began construction Brookside Poultry could have protected itself by taking steps to ensure that the Residents had notice of the issuance of the permit.

## V.

We next examine the role of the circuit court in reviewing a decision of the Board when persons aggrieved by the decision seek certiorari review pursuant to sec. 59.99(10), Stats. 1983–84. Section 59.99(10) provides as follows:

> " (10) CERTIORARI. Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment . . . may, within 30 days after the filing of the decision in the office of the board, commence an action seeking the remedy available by certiorari. . . . If necessary for the proper disposition of the matter, the court may take evidence,

or appoint a referee to take evidence and report findings of fact and conclusions of law as it directs, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review."

The circuit court had before it the record of the proceedings before the Board. The circuit court took evidence on the issue of the property owners' standing to bring the appeal to the Board and on the timeliness of the appeal. The circuit court did not take evidence on the merits of the issuance of the conditional use permit.

The court of appeals concluded that because the circuit court did not take any evidence on the merits of the Board's decision, the circuit court should have reviewed the record and the Board's decision under the traditional standards of common law certiorari review. The court of appeals then reviewed the Board's decision applying the traditional standards of common-law certiorari review and concluded that because the Board's findings and conclusion are supported by a reasonable view of the evidence, the Board's decision must be affirmed.

■
We explore first the traditional standards of common-law certiorari review. In common-law certiorari the circuit court does not take evidence on the merits of the case and the scope of review is limited to the record presented to the tribunal whose decision is being reviewed. The standard of review of the tribunal's record is: "(1) Whether the Board kept within its jurisdiction; (2) whether it acted according to law; (3)

whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *State ex rel. Ruthenberg v. Annuity & Pension Bd.,* 89 Wis. 2d 463, 472, 278 N.W.2d 835 (1979). The test is whether reasonable minds could arrive at the same conclusion reached by the administrative tribunal. *State ex rel. Palleon v. Musolf,* 120 Wis. 2d 545, 549, 356 N.W.2d 487 (1984).

Some statutes, like sec. 59.99(10), which provide for a statutory remedy of certiorari, expressly empower the circuit court to take additional evidence. In *Snyder v. Waukesha County Zoning Board of Adjustment,* 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976), the appellant sought to review by certiorari a decision of the Waukesha County Zoning Board of Adjustment under secs. 59.99(10)–(13), Stats. 1971. The circuit court apparently took no evidence. The court concluded that the standard of review is limited to "(1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." The *Snyder* court interpreted these four standards as requiring the circuit court to defer to the decision of the Board unless the Board's decision is "unreasonable and without a rational basis . . . Thus, the findings of the board may not be disturbed if any reasonable view of the evidence sustains them. . . . The court may not substitute its discretion for that committed to the board by the legislature." 74 Wis. 2d at 476. We conclude that in *Snyder*

the court adopted the same standard of review for statutory certiorari as for common law certiorari, at least when the circuit court takes no evidence.

■

Brookside Poultry appears to argue that the circuit court has broader latitude under sec. 59.99(10) than under common-law certiorari to determine the merits of the administrative decision. According to Brookside Poultry, the court need not give the administrative agency the same deference traditionally accorded under common-law certiorari. Brookside Poultry seems to suggest that under the statute, a court can review the merits of the agency decision *de novo.* We conclude that *Browndale International v. Board of Adjustment,* 60 Wis. 2d 182, 208 N.W.2d 121 (1973), upon which Brookside Poultry principally relies, does not support its position.

In *Browndale,* the issue was "scope of review," that is, whether the circuit court reviewing a zoning board decision under sec. 59.99(10) was limited to the record made before the board or whether the circuit court could receive and consider additional testimony. The appellants in that case argued that in common-law certiorari circuit courts are prohibited from taking testimony. The court was unpersuaded, pointing out that common law and statutory certiorari were different. Section 59.99(10) on its face permits a circuit court to take evidence. The court concluded that the circuit court "did not err by taking additional evidence and basing its findings of fact and conclusions of law, at least in part, upon such evidence." 60 Wis. 2d at 199. The *Browndale* court did not discuss the standard of review that a circuit court uses in reviewing a board's decision when the circuit court takes additional evi-

dence. The *Browndale* decision ultimately did not turn on the facts; it turned on a question of law which the court decided without deference to the determinations of the circuit court or the tribunal.

Reading *Browndale* and *Snyder* together, we conclude that when a circuit court is empowered under the statute providing for certiorari to take evidence on the merits of an administrative decision but takes no such evidence, the circuit court reviews the administrative record under traditional standards of common-law certiorari. We need not discuss in this case the deference the circuit court should give the decision of an administrative tribunal when the circuit court takes evidence on the merits of an administrative decision.

The court of appeals applied the correct standard in reviewing the Board's decision. We have reviewed the record and conclude, as did the court of appeals, that the decision of the board is adequately supported in the record.

For the reasons set forth we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.