Melvin E. KLINGER, Petitioner-Respondent,†

v.

ONEIDA COUNTY and Oneida County Board of
Adjustment, Respondents-Appellants.

Court of Appeals

*No. 87–2250. Submitted on briefs July 8, 1988.—Decided
August 2, 1988.*

(Also reported in 430 N.W.2d 596.)

† Petition to review granted.

For respondents-appellants there was a brief by *Brian E. Pawlak,* Assistant Corporation Counsel, of Rhinelander.

For petitioner-respondent there was a brief by *Sharon M. Gisselman,* of Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Oneida County and the Oneida County Board of Adjustment appeal an order granting Melvin Klinger a variance to Oneida County ordinance 9.90.A.4 (1986). Oneida County contends that the court applied the wrong standard of review when, pursuant to a petition for certiorari under sec. 59.99(10), Stats., the court reversed the unanimous decision of the board denying Klinger a variance. Because we conclude that the court improperly reviewed the matter de novo rather than applying the traditional standard of certiorari review, we reverse.

In 1976, Klinger purchased a parcel of land on Birch Lake in Oneida County. A 1963 trailer house with an addition was located on the property. This

structure was about twenty-two feet from the high-water mark of Birch Lake. Oneida County ordinance 9.51.B (1986) requires a setback of seventy-five feet from the highwater mark, making the structure a nonconforming use. However, this use could be continued subject to, among others, the following condition:

> No structural alteration, addition, or repair to any non-conforming building or structure, over the life of the building or structure, shall exceed fifty percent (50%) of its estimated fair market value at the time of its becoming a nonconforming use, unless it is permanently changed to a conforming use.

Oneida County ordinance 9.90.A.4 (1986).

In 1984, Klinger applied for a building permit to make certain repairs and replace the walls, roof, and windows in the trailer at a cost of $1,300. The application also disclosed that the structure was a nonconforming use. This permit was granted.

In 1987, Klinger applied for a second permit to remodel the trailer at a cost of $2,100. Based on Oneida County ordinance 9.90.A.4, Steven Osterman, the assistant zoning administrator for the Oneida County Planning and Zoning Commission, denied this application. Klinger was advised that because the existing structure was a nonconforming use and the 1986 fair market value of the trailer was only $2,900, the alterations or repairs were not permitted under this ordinance.

Klinger appealed the denial of this application to the board, which held a hearing and made a personal inspection of the property sought to be improved. The board found Klinger's mobile home in a deteriorated condition; the roof leaked, and the window frames and

floors were rotten. The board further found that the mobile home had a structure built over it that formed new sidewalls and a roof. Klinger indicated to the board that he intended to remove the mobile home and convert the shell into a home. He then amended his application, requesting permission to spend $7,000 on alterations and repairs to the structure.

At the hearing, Klinger admitted that the trailer was of no value and that it was not habitable. The board also determined that the cost of the shell built around the mobile home was far in excess of the $1,300 reflected in the previously issued permit. A decision on the application was postponed until the next meeting.

At the next meeting, the board again inspected Klinger's property. It then determined that the proposed shell was larger than the original trailer and that the presence of block walls and a foundation indicated the construction of a new home was taking place even though the necessary permits had not been issued. The board unanimously denied Klinger's request for a variance based upon their determination that he was not repairing or remodeling the original nonconforming use but, instead, was in the process of building a new home. It also based its decision on the fact that the cost of repair exceeded fifty percent of the fair market value of the structure.[1]

[1]Halfway through the application process Klinger amended his request, asking for a variance. Thereafter, it does not appear that Klinger was proceeding under ordinance 9.90.A.4. He did not present any evidence to either the board or the trial court as to the structure's fair market value at the time it became a nonconforming use, nor did either the board or the trial court rely on this ordinance as a basis for its decision. Therefore, we need not address this issue now.

Klinger then sought a writ of certiorari requesting the circuit court to review the board's determination. Pursuant to sec. 59.99(10),[2] the court held an evidentiary hearing at which Osterman and Klinger both testified. Their testimony, however, was substantially the same as that received by the board. After applying a balancing test, the court ordered that the variance be granted.

The determinative issue is whether the circuit court properly applied the correct standard of review when it reviewed the board's decision pursuant to sec. 59.99(10). We conclude that it did not. The circuit court made what it appeared to acknowledge to be a de novo determination in granting the variance. It explicitly stated that the board acted within the bounds of its discretion. Yet the court applied a balancing test and arrived at a different conclusion. The court showed no deference to the board's determination, nor did it apply any of the elements of the common-law

---

[2]Section 59.99(10) provides:

Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment, or any taxpayer, or any officer, department, board or bureau of the municipality, may, within 30 days after the filing of the decision in the office of the board, commence an action seeking the remedy available by certiorari. The court shall not stay proceedings upon the decision appealed from, but may, on application, on notice to the board and on due cause shown, grant a restraining order. The board of adjustment shall not be required to return to the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof. If necessary for the proper disposition of the matter, the court may take evidence, or appoint a referee to take evidence and report findings of fact and conclusions of law as it directs, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify, the decision brought up for review.

certiorari standard of review. Because our standard of review is the same as the one the trial court should have used, we apply it to the board's decision and conclude that it should be upheld. Therefore, we reverse the trial court.

Where the trial court takes no evidence, the traditional common-law certiorari standard of review applies. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd.*, 131 Wis. 2d 101, 122, 388 N.W.2d 593, 601 (1986). This standard of review is limited to a determination as to whether: 1) the board kept within its jurisdiction; 2) it acted according to law; 3) its action was arbitrary, or oppressive or unreasonable, and represented its will and not its judgment; and 4) the evidence was such that it might reasonably make the order or determination in question. *Id.* at 119–20, 388 N.W.2d at 600 (citing *State ex rel. Ruthenberg v. Annuity & Pension Bd.*, 89 Wis. 2d 463, 472, 278 N.W.2d 835, 839–40 (1979)). These four standards require the trial court to defer to the board's decision unless it is unreasonable and without rational basis. *Brookside*, 131 Wis. 2d at 120, 388 N.W.2d at 600. The court may not substitute its discretion for that committed to the board by the legislature. *Snyder v. Waukesha County Zoning Bd.*, 74 Wis. 2d 468, 476, 247 N.W.2d 98, 103 (1976).

In examining the record in light of these four criteria, we conclude that the board's decision not to grant the variance should be upheld. The trial court found, and no one disputes the fact, that the board acted within its jurisdiction. The board applied the relevant ordinances, as it should have; therefore it acted according to the law. Finally, the decision was

not arbitrary or unreasonable. The record contains substantial evidence supporting the board's conclusion that Klinger was in effect building a new structure closer to the lake than allowed by the ordinance without first obtaining the proper permits. In fact, when changing his request for a permit to one for a variance, he admitted that he couldn't remodel because the underlying structure was of no value.

The purpose of zoning requirements like those involved here is to protect the environment. Because the board reasonably found that granting a variance under these circumstances would have defeated this policy, we cannot say that the board erred by denying the variance. Therefore, we must uphold the board's decision.

Klinger also argues that a different standard of review applies. We disagree. In *Brookside,* the Wisconsin Supreme Court specifically found that the traditional standard of certiorari review was to be applied in all cases brought under sec. 59.99(10) except when the court exercised its power to take evidence. The standard of review to be used when the court held an evidentiary hearing was not determined.

In this case, the court heard testimony from Klinger and Osterman. However, this testimony consisted merely of information they had previously disclosed to the board. At the evidentiary hearing, no new facts were identified, no different witnesses called, and no new analyses made. Based upon the fact that the evidentiary hearing consisted of nothing more than a repetition of parts of the record presented before the board, we conclude that the trial court should have limited its review to the standards set forth in *Brookside.*

Were a court able to alter the standard of review from one of deference to a de novo determination merely by holding an evidentiary hearing, a court reviewing a decision pursuant to sec. 59.99(10) would have the ability to pre-empt the authority of the board and do indirectly what it cannot do directly. A court could expand its powers by formally holding an "evidentiary hearing," even though the source and nature of the evidence brought out at that hearing were the same as that heard and considered by the administrative agency. Such a result would reduce sec. 59.99(10) and the standard of review reflected therein to an absurdity. We will not so interpret a statute. *City of La Crosse v. Benson,* 101 Wis. 2d 691, 697, 305 N.W.2d 184, 187 (Ct. App. 1981).

Our supreme court's suggestion in *Brookside* that a different standard of review may apply when the court exercises its fact-finding power clearly contemplates a situation in which the source and nature of the evidence presented to the trial court differed from that considered by the administrative agency. Because the source and nature of evidence before the trial court here was the same as that before the administrative agency, we conclude that the standard of review in *Brookside* applies.

*By the Court.*—Order reversed.