# DELTA BIOLOGICAL RESOURCES, INC., Plaintiff-Appellant,

## v.

# BOARD OF ZONING APPEALS OF the CITY OF MILWAUKEE, Defendant-Respondent.

Court of Appeals

*No. 90-1289. Submitted on briefs December 4, 1990.—Decided February 19, 1991.*

(Also reported in 467 N.W.2d 164.)

905

906

For the plaintiff-appellant the cause was submitted on the briefs of *Debra A. Slater* of *Weiss, Berzowski, Brady & Donahue,* of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Grant F. Langley,* city attorney, with *David J. Stanosz,* assistant city attorney, of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.   This appeal arises from the Board of Zoning Appeals of the City of Milwaukee's (BOZA) denial of Delta Biological Resources, Inc.'s (Delta) reapplication[1] for a special use exception. Delta sought to operate a plasmapheresis[2] laboratory at its leased prem-

---

[1] For the purposes of this opinion it is not necessary to recite the history of Delta's first application and ensuing litigation which resulted in BOZA's agreement to conduct a hearing on Delta's reapplication.

[2] Plasmapheresis is the process of separating a donor's red

ises at 2729 West Vliet Street in Milwaukee. After a public hearing the City Plan Commission issued the following recommendation:

> It was the determination of the Commission on the basis of the plan of operation as submitted that the subject use would have an adverse impact on the abutting property and the adjacent neighborhood because of the site's location adjoining a residential neighborhood.

Upon receipt of the commission's recommendation, BOZA issued its decision and an order denying Delta's reapplication for a special use. The circuit court, upon Delta's certiorari under sec. 62.23(7)(e)10, Stats., affirmed BOZA's order.

The facts are undisputed. Delta has operated its laboratory since May 23, 1986, when it obtained an occupancy permit from the city's Department of Building Inspection. On July 14, 1986, the department served a correction statement upon Delta:

> This letter is to inform you that Occupancy Permit No. 50207 dated May 23, 1986 for a "Plasmapheresis Laboratory" was issued in error and the approval requires compliance with the following section of the City of Milwaukee Zoning Code.

> SECTION 295-323(9)(c) Blood processing centers located in a Local Business/D/40 district require a report from the City Plan Commission, public hearing and a determination of special use exception by the Board of Zoning Appeals.

---

blood cells from plasma. The red blood cells are returned to the donor and the plasma is separated into protein components from which therapeutic agents and diagnostic products are manufactured for medical use.

908

At the reapplication hearing Delta presented evidence of the nature of its operation and its impact on the surrounding neighborhood. Several neighborhood residents and the alderman appeared in opposition to the occupancy permit. BOZA filed findings and concluded:

> [T]his facility is not necessary for the public convenience at this location because of the proximity of a similar facility. That the use is not designed, located in a manner that the public safety is protected, and that the use will impact adversely on the abutting property and the neighborhood.

On appeal Delta contends: (1) that BOZA erred in placing the burden of proof upon it at the reapplication hearing; and (2) that the facts of record do not support BOZA's findings.

The trial court, in a written opinion, determined that the burden of proof rested upon the applicant, Delta, and that BOZA's findings are supported by adequate evidence. We affirm.

## STANDARD OF REVIEW

■

Although expressly authorized by sec. 62.23(7)(e)10, Stats., to take evidence, the trial court did not do so. Under this circumstance the circuit court's certiorari review of the BOZA record follows traditional common law criteria. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd. of Adjustment,* 131 Wis. 2d 101, 119–20, 388 N.W.2d 593, 600 (1986).[3] They are:

---

[3]The applicable statute in *Jefferson* was sec. 59.99(10), Stats., relating to counties. Section 62.23(7)(e)10 affects cities. The wording of the statutes is essentially the same.

> (1)   Whether the Board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Id.* (citation omitted).

■

Upon whom the burden of proof rests to establish the conditions necessary to secure a special use exception is a legal issue. On appeal we are not bound by BOZA's conclusions of law, but we will sustain the agency's conclusions if they are reasonable. *West Allis School Dist. v. DILHR,* 110 Wis. 2d 302, 304, 329 N.W.2d 225, 227 (Ct. App. 1982), *aff'd,* 116 Wis. 2d 410, 342 N.W.2d 415 (1984).

[3]

Whether the evidence reasonably supports BOZA's determination, criterion (4), requires us to ascertain whether reasonable minds could come to the conclusion that BOZA did. Our review of this criterion is the same as the circuit court's. *See Jefferson,* 131 Wis. 2d at 119, 388 N.W.2d at 600.

## BURDEN OF PROOF

■

A special or conditional use permit is one which the zoning code allows.[4] A special use permit allows a property owner to put his or her property to a use expressly permitted by the zoning ordinance, but only if certain conditions are met. *State ex rel. Skelly Oil Co. v. Com-*

---

[4]The terms "special use" and "conditional use" mean the same thing. The Milwaukee Code of Ordinances uses the term "special use."

*mon Council,* 58 Wis. 2d 695, 700–01, 207 N.W.2d 585, 587 (1973). Special uses are tools of municipal planning. *Id.* They have been used to cope with situations which arise when a use, though consistent with the use classification of a particular zone, nevertheless creates special problems or hazards if allowed to develop and locate as a matter of right. *Id.*

Milwaukee Code of Ordinances, sec. 295–59–5–b provided:

> b. Special Uses. No special use shall be granted unless the board finds the following facts and conditions exist, and so indicates in the minutes of its proceedings:
> b–1. Necessity for Public Convenience. The use is necessary for the public convenience at a particular location.
> b–2. Protection of Public Health, Safety and Welfare. The use is designed, located and operated in a manner so that the public health, safety and welfare is protected.
> b–3. Protection of Property. The use will not impact adversely on adjoining property or the neighborhood in general.

No other standards pertaining to plasma centers located in local business districts are found in the code.

Delta argues that the burden of proof to establish that the conditions to the special use have not been met rests on the objector or the person making that assertion. This is because, it argues, a presumption arises that the use serves the public interest from the fact that the legislature permits it, and the special use itself, therefore, presumes a legislative determination that a public need for the use exists. *See Kristensen v. City of Eugene Planning Comm'n,* 544 P.2d 591, 593 (Or. Ct. App. 1976). Delta argues further that the designation of a use

911

as special is a legislative determination that it will not adversely affect the area. *See Dan Gernatt Gravel Prods., Inc. v. Town of Collins,* 482 N.Y.S.2d 587, 589 (N.Y. App. Div. 1984). Thus, it contends that because the legislature's provision for a special use exception is a determination that such use does not materially affect the area adversely, denial is proper only upon proof that adverse impact upon public interest is greater than that which might be normally expected. *Warren County Probation Ass'n v. Warren County Zoning Hearing Bd.,* 414 A.2d 398, 399 (Pa. Commw. Ct. 1980). Delta seizes upon *Skelly* language which defines a special use in terms of a permitted use when certain conditions have been met, arguing that the objectors have not met their burden to show that the conditions have not been met.

We reject Delta's argument because its linchpin, the presumption that the conditional use serves the public interest, does not exist in Wisconsin. "A presumption is a rule of law, statutory or judicial, by which a finding of a basic fact gives rise to existence of presumed fact, until presumption is rebutted." Black's Law Dictionary 1185 (6th ed. 1990). The zoning ordinance allows certain uses, provided certain conditions are met. These conditions are not presumed to be met either by judicial fiat or by the terms of ordinance, sec. 295–59–5–b, itself. Because the existence of the use does not presumptively fulfill its conditions, no duty rested upon the objectors to establish their nonfulfillment. The burden, rather, rested upon Delta to prove that it met the conditions.

The ordinance sets forth the conditions in the conjunctive. This indicates that the applicant, Delta, must establish each condition. *See Johnson v. Board of Adjustment,* 239 N.W.2d 873, 884–85 (Iowa 1976). In *Bat-A-Ball, Inc. v. City of Chicago,* 540 N.E.2d 803, 806 (Ill. App. Ct. 1989), involving an ordinance very similar

912

to sec. 295-59-5-b, the Illinois court required the applicant to prove that its proposed use met all the standards which were set forth conjunctively. No preexisting legislative finding or statement of purpose that a plasma center accords with the zoning plan exists. Hence, the ordinance placed in Delta's hands the laboring oar to prove that it met the conditions for its proposed use under the ordinance. *See Mobil Oil Corp. v. Oaks,* 390 N.Y.S.2d 276, 278 (N.Y. App. Div. 1976).

The most convincing authority, however, comes from *Skelly.* After characterizing special uses as flexible devices designed to cope with special problems arising from the development and location of permitted uses, the supreme court defined "flexibility" in the light of *Zylka v. City of Crystal,* 167 N.W.2d 45 (Minn. 1969). *Skelly,* 58 Wis. 2d at 701, 207 N.W.2d at 587. Recognizing certain desirable uses as churches, schools and hospitals, the Minnesota court nevertheless determined that these uses may be denied because of special factors including traffic congestion, population density, noise and public health. *Id.*[5] Each applicant, therefore, must shoulder its burden to prove that it meets the conditions.[6]

---

[5]*See also* 3 Rathkopf, *The Law of Zoning and Planning* sec. 41.10, at 41-57 (4th ed. 1989), states:

> Generally, it may be said, that no matter how vague and indefinite or how specific the standards may be, it is the applicant who must assume the burden of showing that the proposed use will conform to them. This is inherent in the nature of the application, and the accepted order of things. Few applicants for a special permit can expect that the use sought is theirs for the asking.

[6]*Auburndale State Bank v. Dairy Farm Leasing Corp.,* 890 F.2d 888, 893 (7th Cir. 1989) suggested that the burden of proof rests upon the party who would lose if no evidence were presented.

We disagree with BOZA's concession in its brief that when an applicant makes a prima facie showing of compliance with conditions, the burden of going forward with rebuttal evidence shifts to the objectors. The burden of proof at all times remains with the applicant. If, of course, the objectors present no evidence they bear the risk that the Board may grant the use upon the record.

## SUFFICIENCY OF EVIDENCE

As stated previously, resolution of this case requires us to determine whether BOZA reasonably could make the order denying Delta's reapplication petition; or, to state the issue another way, whether BOZA's decision is adequately supported by the record.

BOZA properly considered the existence of two plasma centers within two miles of Delta's location, one of which was approximately a quarter of a mile away. *See Lucky Stores, Inc. v. Board of Appeals,* 312 A.2d 758, 768 (Md. 1973) (examining the concentration of gas stations). A Delta witness testified that if it closed down its donors probably would go to the nearby center.

In one day opponents gathered thirty signatures of residential neighbors in opposition to Delta's use. They presented evidence that Delta's screening procedures failed to eliminate unqualified donors. In some instances Delta failed to identify donors. Opponents presented evidence from which BOZA could infer that Delta's presence increased the number of loiterers in the area, particularly those whom Delta rejected. This adversely impacted residential neighbors. Loitering by special use patrons is a proper consideration for a board to deny the use. *Bat-A-Ball,* 540 N.E.2d at 807. Credible evidence

and reasonable inferences support BOZA's findings relating to public convenience, protection of health and property. Although Delta makes cogent arguments in support of its reapplication, we cannot say that BOZA's decision is not reasonably supported by the record. The weight to be accorded the facts is for the board to determine rather than the courts. *Silvernail v. Rago,* 404 N.Y.S.2d 457, 458 (N.Y. App. Div. 1978). "[I]f there is relevant, credible, and probative evidence upon which reasonable persons could rely to reach a conclusion, the finding must be upheld." *Princess House, Inc. v. DILHR,* 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173-74 (1983).

*By the Court.*—Order affirmed.