STATE of Wisconsin EX REL. DEPARTMENT OF NATURAL RESOURCES, and Town of Richmond, Petitioners-Respondents,

v.

WALWORTH COUNTY BOARD OF ADJUSTMENT, Respondent-Respondent,

Linda M. FRIEDMAN, Intervenor-Appellant.

Court of Appeals

*No. 92–0170. Submitted on briefs May 29, 1992.—Decided July 15, 1992.*

(Also reported in 489 N.W.2d 631.)

On behalf of the intervenor-appellant, the cause was submitted on the briefs of *David C. Williams* of *Allen, Harrison, Williams, McDonell & Swatek* of Lake Geneva.

On behalf of the petitioners-respondents, State of Wisconsin, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Lorraine C. Stoltzfus*, assistant attorney general.

On behalf of the petitioners-respondents, Town of Richmond, the cause was submitted on the brief of *David J. Nommensen* of *Seymour, Kremer, Nommensen & Morrissy* of Elkhorn.

409

On behalf of the respondent-respondent, Walworth County Board of Adjustment, the cause was submitted on the brief of *Dianne M. Soffa,* assistant corporation counsel.

Before Brown, Anderson and Snyder, JJ.

BROWN, J. This is another case in which a land-owner and the DNR do battle over the state's shoreland zoning policies. Here, the landowner contends that the DNR has no standing under our statutes to appeal local board of adjustment decisions, and that even if the DNR does have standing, it did not correctly follow the statute in initiating its appeal. Because the DNR is a "trustee" of the navigational waters of this state, it is a "person aggrieved" and has standing to appeal; further, the DNR correctly followed the statute in initiating its appeal. We affirm as to the DNR. The town of Richmond, however, did not follow the statutes; so we reverse as to it.

The landowner is Linda Friedman. She owns the Snug Harbor campground on Turtle Lake. Development and use of the land in this area is regulated by the Walworth County Shoreland Zoning Ordinance. In 1967, the circuit court declared the campground a legal, noncon-forming use under the ordinance. In 1990, Friedman decided to make major changes to the campground, including removal of existing cottages and the building of new ones. The zoning administrator for the county determined that while Friedman needed to obtain the usual sewer, erosion control, and building permits, she did not need a zoning permit for development of the campground because the 1967 judgment was still in effect, and the county could not restrict the area without a further court order amending the previous judgment.

The DNR and the town of Richmond appealed the zoning administrator's decision to the Walworth County

Board of Adjustment, arguing that Friedman's plans for the campground constituted an extension, enlargement or substitution of a nonconforming use. The board upheld the zoning administrator. The DNR and the town then sought certiorari review in the circuit court. The court reversed the board and ordered the board to require Friedman to file an application for a Certificate of Compliance if she wanted to continue with her plans for the campground. Friedman appeals.[1]

■ We initially address the standing issue. Section 59.99(4), Stats., provides that appeals of zoning decisions may be taken "by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any decision of the . . . administrative officer." Friedman argues that the DNR lacks standing because it is not a "person aggrieved" or a municipal officer, department, board or bureau.

Friedman further contends that sec. 59.971, Stats., permits the DNR to require a county to adopt a shoreland zoning ordinance, but it provides for the county board of adjustment to handle variances and appeals regarding the shorelands. She also argues that according to *Just v. Marinette County,* 56 Wis. 2d 7, 18, 201 N.W.2d 761, 769 (1972), when the state required counties to pass shoreland zoning ordinances, the state thereby delegated authority over the navigable waters of the state to the county. Friedman concludes that the statutory framework was designed such that the boards of adjustment are the final arbiters of shoreland zoning policy, not the DNR.

---

[1]Although named as a respondent, the Walworth County Board of Adjustment filed a brief largely supporting Friedman's arguments. Because the board's arguments are subsumed in Friedman's contentions, we will refer only to Friedman.

■

We conclude that the DNR does have standing to appeal zoning decisions regarding shorelands. The DNR is a "person aggrieved" by a county decision affecting shorelands because it is a trustee of the navigable waters of the state. Our supreme court has recognized that the state has standing to appeal decisions which violate the public trust. *State v. Deetz,* 66 Wis. 2d 1, 13, 224 N.W.2d 407, 413 (1974). Moreover, according to *Just,* the DNR has a *duty* to appeal decisions which do not comply with shoreland zoning requirements. *Just,* 56 Wis. 2d at 18, 201 N.W.2d at 768. Additionally, both our supreme court and this court have implicitly granted standing to the DNR to appeal county zoning decisions. *See State v. Trudeau,* 139 Wis. 2d 91, 94–95, 408 N.W.2d 337, 339 (1987), *cert. denied,* 484 U.S. 1007 (1988); *State v. Ozaukee Bd. of Adjustment,* 152 Wis. 2d 552, 564, 449 N.W.2d 47, 52 (Ct. App. 1989).

■

This policy is borne out by our state administrative rules. *See* Wis. Adm. Code sec. **NR 115.06**(4). Administrative rules have the force and effect of law. *Law Enforcement Standards Bd. v. Lyndon Station,* 101 Wis. 2d 472, 488, 305 N.W.2d 89, 97 (1981). The state's administrative code gives the DNR the responsibility of monitoring the administration and enforcement of shoreland zoning ordinances and the authority to appeal actions of county zoning officials or county boards of adjustment. Wis. Adm. Code Sec. **NR 115.06**(4). We hold that the DNR has standing.

Regarding the issue of whether the DNR and the town's initial appeals to the board of adjustment were timely, Friedman contends that *actual* verbal notice of the zoning administrator's decision occurred in November 1990 and that this notice, rather than the written

notice in December 1990, controls whether the DNR's and town's appeals were timely filed in January 1991. She points to *State ex rel. Brookside Poultry Farms v. Jefferson County Bd. of Adjustment,* 131 Wis. 2d 101, 117–18, 388 N.W.2d 593, 599 (1986), where our supreme court concluded that because aggrieved residents received no written notice of the issuance of a building permit, the beginning of the building's construction constituted notice and started the clock running on the right to appeal. Here, Friedman argues that the DNR and the town received notice of the zoning administrator's decision in November because they were told that an erosion control permit and a plumbing permit had been issued by the county. She contends, therefore, that the clock must start running on the right to appeal from the date of that notice.

Friedman reads *Brookside* wrongly. The court in that case was faced with a situation where a county failed to promulgate rules for zoning appeals as required by sec. 59.99(4), Stats. The supreme court was concerned that without such rules, access to judicial review would be hampered. Indeed, the court noted that the aggrieved residents had not received written notice of the zoning administrator's issuance of a building permit. *Brookside,* 131 Wis. 2d at 114, 388 N.W.2d at 598. Noting that sec. 59.99(4) mandates a "reasonable" time to appeal, the supreme court was troubled by the fact that absent notice of the decision, there was no way to determine a "reasonable" time to appeal. *Brookside,* 131 Wis. 2d at 113, 388 N.W.2d at 597–98. Rather than allow this absurd result, the court looked to the time when the residents first found out about the building permit, fashioned a constructive notice remedy to start the appeal time running from that date, and thereby resolved the case.

Here, we do not have the same facts. In this case, the time for appealing the zoning administrator's decision is clearly specified in sec. 10.5, Walworth County Shoreline Zoning Ordinance. That ordinance states: "[A]ppeals shall be filed . . . within (30) days after the date of *written* notice of the decision or order of the *zoning administrator.*" *Id.* (emphasis added). A written decision was issued by the zoning administrator in this case. The appeal was filed based upon that written notice.

We read *Brookside* to say that the appeal time begins on one of two dates. If there is a provision in the ordinance for notice, then the clock begins to run at the time the notice is given. If no such provision exists, then the clock begins to run when the aggrieved parties find out about the decision. This rule is designed to *expand* access to judicial review rather than to limit it.

Even if the law were as Friedman suggests—that notice is either by actual verbal notice or by written decision, whichever comes first—we would not accept the facts relied upon by Friedman to argue that *actual* verbal notice of the zoning administrator's decision was given in November 1990. First, the permits relied upon for constructive notice were not issued by the zoning administrator. They were an erosion control permit and a plumbing permit, and thus were not part of the *decision* of the zoning administrator sufficient to start the clock running for constructive notice purposes. Second, the facts cited by Friedman are taken from affidavits in the motion to dismiss, not from the record of the proceedings as is required for certiorari review.

We conclude that the appeal time started running only when the zoning administrator issued a written

414

decision on December 27, 1990. When the DNR's and the town's appeals were filed with the board of adjustment on January 25, 1991, they were timely.

Friedman's final argument concerns the proper statutory procedure for certiorari appeals to the circuit court. She cites sec. 801.02(5), Stats., as a prelude to her argument, which we repeat here:

> An action seeking a remedy available by certiorari . . . may be commenced under sub. (1), by service of an appropriate original writ on the defendant named in the writ if a copy of the writ is filed forthwith, or by filing a complaint demanding and specifying the remedy, if service of an authenticated copy of the complaint and of an order signed by the judge of the court in which the complaint is filed is made . . . within the time period specified in the order.

Friedman also cites *Tobler v. Door County,* 158 Wis. 2d 19, 461 N.W.2d 775 (1990). In that case, our supreme court held that the phrase "under sub. (1)" refers to the summons and complaint process specified in sec. 801.02(1) for the commencement of all civil actions. *Tobler,* 158 Wis. 2d at 23, 461 N.W.2d at 776. Section 801.02(1) states:

> A civil action . . . is commenced . . . when a summons and a complaint . . . are filed with the court, provided service of an authenticated copy of the summons and of the complaint is made . . . within 60 days after filing.

Friedman properly reads these statutes together with *Tobler.* She correctly observes that there are two different procedures which can be used to commence certiorari review—a complaint procedure and a writ procedure. Furthermore, the complaint procedure can be

pursued by one of two alternate methods: the complaint and summons method, in which the respondent has sixty days to answer; or, the complaint and court order method, which is used when the time for service or the time for the respondent's answer needs to be shortened.

The commencement of the certiorari appeal is measured differently in the complaint procedure than it is in the writ procedure. If an appellant employs the *complaint* procedure, commencement of the appeal is measured by the act of *filing,* provided that the complaint and its accompanying document are served on the respondent within the appropriate time period. In contrast, if an appellant employs the *writ* procedure, commencement of the appeal is measured by the act of *serving* the *original* writ, provided that a copy of the writ is filed "forthwith." When combined with the thirty-day commencement requirement in sec. 59.99(10), Stats., sec. 801.02(1) and (5), Stats., indicates that a *complaint* must be *filed* within thirty days, whereas a *writ* must be *served* within thirty days.

The DNR labeled its appeal a Petition for Certiorari. It filed its petition and a summons in circuit court within thirty days of the board's decision and served both on the board the same day. The town filed a petition for a writ of certiorari also within thirty days of the board's decision. The town obtained the writ the day it filed the petition, but did not serve the writ until more than a month later.

Friedman argues that the DNR's appeal to the circuit court was defective because it was designated a Petition for Certiorari, and this is not one of the three methods for initiating review. She argues that the town's appeal was defective because it filed the appeal as a "writ," but it did not meet the service requirements for a

writ in two respects: it did not *serve* the board with the writ until well after the statutory time period of thirty days from the board's decision specified in sec. 59.99(10), Stats.; and it did not serve the *original* writ, as required by sec. 801.02(5), Stats. Apparently, Friedman argues that the circuit court lacked personal jurisdiction because of these defects.

We reject Friedman's argument as to the DNR. The information supplied in the "petition" was the same kind of information that would be supplied in a "complaint." It served the same purpose—notice to the other parties of claims for relief. The only difference is in the label. As such, the fact that the appeal was commenced by service of a summons and petition rather than a summons and complaint is precisely that kind of hypertechnical defect that the law chooses to ignore unless there is prejudice.

The test regarding whether a defect is hypertechnical or so fundamental as to affect personal jurisdiction is set forth in *American Family Mut. Ins. Co. v. Royal Ins. Co.*, 167 Wis. 2d 524, 533, 481 N.W.2d 629, 632 (1992). The supreme court wrote that "[d]efects are either technical or fundamental—where the defect is technical, the court has personal jurisdiction only if the complainant can show the defendant was not prejudiced, and, where the defect is fundamental, no personal jurisdiction attaches regardless of prejudice or lack thereof." *Id.*

Fundamental errors are those errors in which there is a failure to comply with sec. 801.02(1), Stats., *i.e.,* where the complainant fails to file a summons and complaint naming the defendant, where the copy served upon the defendant is not authenticated, or where the

service of the authenticated copy of the summons and complaint is not made within sixty days after the filing. *American Family,* 167 Wis. 2d at 533-34, 481 N.W.2d at 632-33.

Thus, it is a fundamental error if a complaint is not filed. To determine what a "complaint" is, we look to sec. 802.02(1)(a), Stats. That section refers to a "pleading" which is: "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." This pleading must also contain a "demand for judgment for the relief the pleader seeks." Section 802.02(1)(b).

While sec. 801.02(1), Stats., refers to this pleading as a "complaint," it is clear from sec. 802.02(1), Stats., that the name for the pleading is not important; rather, it is the content of the pleading which is important. We conclude that the DNR's summons and petition were the same in content and purpose as if they were called a summons and complaint. Thus, the DNR did not run afoul of sec. 801.02(1). The naming of the pleading as a "petition" was a technical error that did not cause prejudice.

Friedman cites *State ex rel. Schwochert v. Marquette County Bd. of Adjustment,* 132 Wis. 2d 196, 206, 389 N.W.2d 841, 845 (Ct. App. 1986), where we wrote that "the petition is not a complaint." In *Schwochert,* the appellant did not serve a summons with the petition. Therefore, the petition stood by itself and the error was fundamental. Here, the DNR filed and served a summons with its petition. Therefore, *Schwochert* is easily distinguished. The DNR's pleading passes muster.

We hold, however, that there was error involving the town of Richmond's appeal. The town chose to use a

writ rather than a complaint. Having chosen to use a writ, the town was obliged to obtain a writ from the court and serve the original writ upon the board within thirty days of the board's decision. Although the town requested the writ and obtained it from the court in the necessary time, it did not *serve* the writ on the board until more than two months after the board's decision.

The circuit court lacked jurisdiction because the date of *service* measures the commencement of an appeal by writ. Furthermore, we cannot construe the writ as a summons and complaint procedure because the town did not file a summons. Therefore, we reverse the court's order as to the town.

*By the Court.*—Order affirmed in part and reversed in part.