Jennifer R. KOENIG and Jenny's Bunch Home
Day Care, Petitioners-Respondents,

v.

PIERCE COUNTY DEPARTMENT OF HUMAN SERVICES,
Respondent-Appellant.†

Court of Appeals

*No. 2015AP410. Submitted on briefs January 5, 2016.
—Decided February 17, 2016.*

2016 WI App 23

(Also reported in 877 N.W.2d 632.)

† Petition for Review Filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Lori M. Lubinsky* and *Timothy M. Barber* of *Axley Brynelson, LLP*, Madison.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Timothy J. O'Brien* of *Bakke Norman, S.C.*, New Richmond.

Before Stark, P.J., Hruz and Seidl, JJ.

¶ 1. STARK, P.J. The Pierce County Department of Human Services (DHS) appeals a judgment reversing an administrative panel's decision that Jennifer Koenig engaged in child maltreatment in the operation of her day care business. The circuit court concluded reversal was warranted because Koenig's due process rights were violated during the administrative proceedings. DHS argues that conclusion was erroneous, and it also contends the court erred by denying its motion to dismiss. We reject these arguments and affirm.

## BACKGROUND

¶ 2. Koenig operated a day care business in Pierce County known as Jenny's Bunch Home Day Care. Because Koenig cared for more than three children under the age of seven, the day care was required to be licensed by the State of Wisconsin. *See* WIS. STAT. § 48.65(1).[1]

¶ 3. On the afternoon of April 30, 2013, A.N. arrived at Koenig's day care to pick up his five-month-old son, H.A.N. Koenig told A.N. that H.A.N. was asleep. However, A.N. observed that H.A.N. was limp, and A.N. was unable to wake the child. A.N. sought medical attention for H.A.N., who was ultimately diagnosed with a brain injury, a subdural hematoma, and retinal hemorrhages.

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

¶ 4. A report of suspected child abuse was made to DHS, and an investigation ensued. DHS subsequently made an initial determination that Koenig had abused H.A.N. On June 24, 2013, DHS notified Koenig of its initial determination by a written "Notice of Child Maltreatment Determination and Right to Appeal." On the same date, DHS reported its determination to the Wisconsin Department of Children and Families, the state agency responsible for licensing day care centers. The Department of Children and Families issued a notice of license revocation to Koenig on July 1, 2013.

¶ 5. On July 12, 2013, Koenig sent DHS a "Child Maltreatment Determination Appeal Request."[2] On July 18, DHS's director informed Koenig her appeal would be held in abeyance pending the outcome of any criminal proceedings, pursuant to WIS. STAT. § 48.981(3)(c)5m.[3] On July 29, Koenig objected to holding the matter in abeyance and requested a hearing. She also requested copies of all documents, records, and information in DHS's possession relating to its

---

[2] It is undisputed that Koenig's appeal of the child maltreatment determination was subject to the procedures set forth in WIS. STAT. ch. 68. *See Jay M.H. v. Winnebago Cty. Dep't of Health & Human Servs.*, 2006 WI App 66, ¶¶ 2–3 & n.2, 292 Wis. 2d 417, 714 N.W.2d 241; DEPARTMENT OF CHILDREN AND FAMILIES, MEMO SERIES CFS 98–14, APPEAL PROCESS FOR SUBSTANTIATED MALTREATMENT FINDINGS (Oct. 13, 1998), *available at* http://dcf.wisconsin.gov/memos/num_memos/1998/98–14.htm (last visited Jan. 13, 2016).

[3] No criminal proceedings were ever initiated in relation to H.A.N.'s injuries.

All references to WIS. STAT. § 48.981(3)(c)5m. are to the 2011–12 version, without the changes enacted by 2013 Wis. Act 20, which took effect on January 1, 2015. *See* 2013 Wis. Act 20, §§ 945, 9306(2), 9406(2i).

investigation and maltreatment finding. On August 8, DHS informed Koenig the abeyance period would not exceed ninety days from July 15, the date it received her appeal request.

¶ 6. On September 12, DHS provided Koenig with heavily redacted copies of the documents she had requested. Koenig objected to the redacted documents, and, on October 8, DHS provided unredacted records totaling 559 pages and 11 CDs/DVDs. On October 10, DHS notified Koenig it would be conducting a "written review" of the child maltreatment determination and would issue a written decision "after October 15[.]" The October 10 correspondence further advised Koenig she had a right to submit written evidence and argument in support of her position, under Wis. Stat. § 68.09(4), but she needed to do so by October 15 "for full consideration."

¶ 7. By letter dated October 10, Koenig objected to the short time allotted for her to submit evidence and argument, particularly given that the unredacted records were not provided to her until October 8. Koenig also asserted DHS had previously indicated it would be conducting an administrative appeal under Wis. Stat. §§ 68.10 and 68.11, rather than a written review under Wis. Stat. § 68.09. DHS responded by letter dated October 11 and stated it was treating Koenig's letter as a request for an extension. DHS therefore extended the deadline for submitting written evidence and argument to October 30. DHS also clarified that "this is a written review pursuant to Wis. Stat. § 68.09." Koenig responded on October 15, agreeing that she had requested additional time to submit evidence and argument "due to [DHS's] delayed response to our request for documents[,]" but asserting "the time for review should [not] have been extended

beyond the 15 days called for in the statute in the first instance." Koenig further asserted she was "not conceding or stipulating that [DHS] has followed the proper procedures in providing review" and was not "waiving any claims or defenses."

¶ 8. In compliance with DHS's directive, Koenig submitted written evidence and argument in support of her position on October 29. On October 31, DHS issued a "Child maltreatment determination review and written notice of decision," which affirmed the initial determination of maltreatment. The document notified Koenig she had a right to appeal DHS's determination by requesting an administrative decision within thirty days, pursuant to Wis. Stat. § 68.10.

¶ 9. On November 27, Koenig notified DHS she was appealing its October 31 decision. The case therefore proceeded under Wis. Stat. §§ 68.10 and 68.11. A hearing was scheduled for December 12, but was postponed until January 14, 2014.[4] The hearing was ultimately held on January 14 and 27, before a three-person panel. On February 10, the panel issued a written decision upholding DHS's child maltreatment determination.

¶ 10. Koenig then commenced the instant certiorari action, using the "complaint and order" procedure set forth in Wis. Stat. § 801.02(5). On March 7, 2014, she filed a "Complaint for Judicial Review by Certiorari Pursuant to Wis. Stat. § 68.13," naming DHS as the defendant/respondent. Then, on March 18, the circuit court entered an order requiring DHS "to an-

---

[4] WISCONSIN STAT. § 68.11(1) requires the hearing on an administrative appeal under Wis. Stat. § 68.10 to be conducted within fifteen days of receipt of the notice of appeal. However, Koenig and DHS agreed to waive the fifteen-day time limit for conducting the hearing.

swer the Complaint and to provide the complete Record of Proceedings, including the prepared transcripts of the hearing, to this Court within ten days of being served an authenticated copy of the Complaint and this Order."

¶ 11. Authenticated copies of the complaint and order were served on DHS's director on March 19. On March 24, DHS moved to dismiss, arguing: (1) Koenig failed to properly commence the certiorari action; (2) the action was not commenced within the thirty-day deadline for bringing certiorari actions; (3) Koenig improperly named DHS as the defendant/respondent instead of the administrative appeal panel; and (4) Pierce County was not properly served because the complaint and order were not served on the county board chairperson or county clerk.

¶ 12. Hearings on DHS's motion were held on April 22 and May 27, 2014. Before the second hearing, Koenig moved the circuit court "for an amendment to the Order dated and filed March 18, 2014." Koenig served the authenticated complaint and original order on the Pierce County clerk on April 28. The circuit court signed Koenig's proposed amended order the following day, over DHS's objection. The amended order modified the original order by adding the following language: "The plaintiff/petitioner shall serve defendant/respondent with an authenticated copy of the Complaint and this Order on or before May 16, 2014." On April 30, the amended order was served on both the county clerk and DHS's director. At the close of the May 27 hearing, the circuit court denied DHS's motion to dismiss.

¶ 13. The court heard oral argument on the merits of Koenig's challenge to the panel's decision on

November 7, 2014. The court concluded the panel's decision was supported by substantial and credible evidence, and the panel applied the correct burden of proof and standard of review.[5] However, the court found that Koenig's due process rights were violated during the administrative proceedings in two ways: (1) when DHS failed to complete its paper review of the initial determination of child maltreatment within fifteen days after it received Koenig's appeal request, contrary to Wis. Stat. § 68.09(3); and (2) when the administrative panel refused to allow Koenig to cross-examine DHS's medical expert about other cases in which he had testified. Finally, the court concluded reversal of the panel's decision was the appropriate remedy, rather than remanding for a new hearing, because DHS's violation of the fifteen-day time limit set forth in § 68.09(3) could not be cured on remand.

¶ 14. A judgment reversing the panel's decision and vacating DHS's determination of child maltreatment was entered on November 25, 2014. This appeal follows.

---

[5] On certiorari, courts apply the substantial evidence test to determine whether the evidence is sufficient to support the administrative body's decision. *Clark v . Waupaca Cty. Bd. of Adj.*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Roberts v. Manitowoc Cty. Bd. of Adj.*, 2006 WI App 169, ¶ 28, 295 Wis. 2d 522, 721 N.W.2d 499 (citation omitted). This test is highly deferential, and the court may not substitute its view of the evidence for that of the administrative body. *Clark*, 186 Wis. 2d at 304. The administrative body, not the reviewing court, determines the weight and credibility of the evidence. *Delta Biological Res., Inc. v. Board of Zoning Appeals*, 160 Wis. 2d 905, 915, 467 N.W.2d 164 (Ct. App. 1991).

## STANDARDS OF REVIEW

¶ 15. Typically, in an appeal from a circuit court's decision on certiorari, we review the decision of the underlying administrative body, not the circuit court. *Murr v. St. Croix Cty. Bd. of Adj.*, 2011 WI App 29, ¶ 19, 332 Wis. 2d 172, 796 N.W.2d 837. The scope of our review is limited to

> (1) whether the [administrative body] kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

*Ottman v. Town of Primrose*, 2011 WI 18, ¶ 47, 332 Wis. 2d 3, 796 N.W.2d 411.

¶ 16. Here, however, with one exception we are not called upon to review the administrative panel's decision that Koenig abused H.A.N. Instead, DHS argues the circuit court erred by denying its motion to dismiss the certiorari action. Specifically, DHS argues dismissal was proper because: (1) Koenig's use of the "complaint and order" procedure set forth in Wis. Stat. § 801.02(5) was improper; (2) Koenig did not timely obtain an order that complied with § 801.02(5); (3) Koenig improperly named DHS as the defendant; and (4) Koenig failed to timely serve either the chairperson of the Pierce County board or the county clerk.[6] These issues were not, and could not have been, raised before the administrative panel. Accordingly, we must review the circuit court's rulings on these issues.

---

[6] DHS also argues the amended order does not relate back to the filing of the complaint. Because our conclusion that the

¶ 17. The parties agree that whether a certiorari action was properly commenced under WIS. STAT. § 801.02(5) is an issue of statutory interpretation, which presents a question of law that we review independently. *See Nickel River Invs. v. City of La Crosse Bd. of Review*, 156 Wis. 2d 429, 431, 457 N.W.2d 333 (Ct. App. 1990). The parties also agree that whether a petition for certiorari was directed to the correct respondent is a question of law for our independent review. *See State ex rel. Myers v. Smith*, 2009 WI App 49, ¶ 9, 316 Wis. 2d 722, 766 N.W.2d 764. Whether Koenig timely served the chairperson of the Pierce County board or the county clerk involves the application of undisputed facts to a legal standard, which also presents a question of law. *See Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 267, 548 N.W.2d 64 (1996). Thus, our review of the issues underlying the circuit court's decision to deny DHS's motion to dismiss is de novo.

¶ 18. DHS also argues the circuit court erred by concluding DHS and the administrative panel violated Koenig's right to due process. This issue requires us to review the actions of DHS and the administrative panel, rather than the circuit court's decision. *See Jackson v. Buchler*, 2010 WI 135, ¶ 38, 330 Wis. 2d 279, 793 N.W.2d 826. However, whether Koenig's right to due process was violated during the administrative proceedings is a question of law subject to independent appellate review. *See id.*, ¶ 39. If DHS or the administrative panel violated Koenig's right to due process,

circuit court properly denied DHS's motion to dismiss does not rely on the relation-back doctrine, we need not address this argument.

they failed to act "according to law," *see State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 628–29, 579 N.W.2d 698 (1998), and reversal is warranted.

## DISCUSSION

*DHS's motion to dismiss*

 *1. Koenig properly used the "complaint and order" procedure set forth in W*IS. S*TAT.* *§ 801.02(5).*

 ¶ 19. W*ISCONSIN* S*TAT.* § 801.02(5) sets forth three procedures a party may use to commence a certiorari action. *See Nickel River Invs.*, 156 Wis. 2d at 431. First, the action "may be commenced under sub. (1)"—that is, by filing a summons and complaint. Sec. 801.02(5). Second, the action may be commenced "by service of an appropriate original writ on the defendant named in the writ if a copy of the writ is filed forthwith[.]" *Id.* Third, the plaintiff may file

> a complaint demanding and specifying the remedy, if service of an authenticated copy of the complaint and of an order signed by the judge of the court in which the complaint is filed is made upon the defendant under this chapter within the time period specified in the order. The order may specify a time period shorter than that allowed by s. 802.06 for filing an answer or other responsive pleading.

*Id.*

 ¶ 20. Koenig chose to use the third procedure specified in W*IS.* S*TAT.* § 801.02(5)—the "complaint and order" method. DHS, however, argues that method was unavailable to Koenig. DHS cites a 1981 Judicial Council Note to § 801.02, which states, in relevant part:

> Sub. (5) allows the additional option of using an order to shorten the time for filing a response to the complaint in lieu of a summons. This option is for the emergency situation when the case may be moot before a response would be filed. The order serves the same purpose as the alternative writ and the order to show cause used to initiate the action under writ procedures.

Based on this Note, DHS argues Koenig was required to establish an emergency circumstance that would render her action moot if the complaint and order process were not utilized. DHS further argues Koenig failed to demonstrate the requisite emergency.

■■■■

¶ 21. We disagree with DHS's interpretation of WIS. STAT. § 801.02(5). Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning[.]" *Id.* If the statute's meaning is plain, there is no ambiguity, and the statute is applied according to its terms. *Id.*, ¶ 46. Here, the text of § 801.02(5) does not use the term "emergency" or require any type of emergency situation to be present before a plaintiff may use the complaint and order procedure to commence a certiorari action. The Judicial Council Note upon which DHS relies is not part of the statute and is merely advisory. Further, while the Judicial Council Note states the complaint and order procedure is "for the emergency situation when the case may be moot before a response would be filed[,]" it does not expressly state the procedure is limited to that context or may not be used in other circumstances. While DHS asserts the purpose of the complaint and order proce-

dure is to shorten the time for filing a response to the complaint in circumstances where an emergency so requires, we observe that the statute does not require a circuit court to order a shortened time for response; it merely states the order "may specify" a shorter time period for answering than that allowed by WIS. STAT. § 802.06. *See* § 801.02(5).

¶ 22. Based on the plain language of WIS. STAT. § 801.02(5), we therefore conclude a plaintiff need not demonstrate the existence of an emergency in order to initiate a certiorari action using the complaint and order method. Accordingly, we reject DHS's argument that Koenig erred by using that method to commence her certiorari action.

> *2. Koenig timely obtained an order that complied*
> *with WIS. STAT. § 801.02(5).*

¶ 23. DHS next argues that, even if Koenig could properly use the complaint and order method to commence her certiorari action, she did not timely obtain an order that complied with WIS. STAT. § 801.02(5). DHS notes that, pursuant to WIS. STAT. § 68.13(1), Koenig was required to commence her certiorari action within thirty days after receipt of the administrative panel's final determination. The panel issued its final determination on February 10, 2014. Koenig filed her complaint on March 7, 2014, but she did not obtain a signed order from the circuit court until March 18. Because the order was obtained more than thirty days after Koenig received the panel's decision, DHS argues her certiorari action was not timely commenced.

¶ 24. We reject DHS's contention that, in order to timely commence her certiorari action, Koenig was required both to file her complaint and obtain a signed

order within thirty days of the administrative panel's final determination. Nothing in Wis. Stat. § 801.02(5) requires the order discussed in the statute to be obtained prior to the end of the thirty-day time limitation set forth in Wis. Stat. § 68.13(1). Section 801.02(5) merely states, as relevant here, that a certiorari action "may be commenced . . . by filing a complaint demanding and specifying the remedy, if service of an authenticated copy of the complaint and of an order signed by the judge . . . is made upon the defendant under this chapter within the time period specified in the order." Although DHS argues a certiorari action is not "commenced," for purposes of the complaint and order method, until the complaint is filed and the order is obtained, the plain language of § 801.02(5) belies that assertion.

¶ 25. Moreover, under DHS's interpretation, the viability of a plaintiff's certiorari action would depend, at least in part, on how quickly the circuit court responded to the plaintiff's request for an order. Here, for instance, Koenig filed her complaint and requested an order within thirty days of the panel's decision, but the circuit court did not respond to her request until after the thirty-day period had elapsed. In cases where a plaintiff has timely filed a complaint, conditioning his or her ability to bring a certiorari action on the speed with which the circuit court issues an order would be unreasonable. *See Kalal*, 271 Wis. 2d 633, ¶ 46 (we interpret statutes reasonably, to avoid absurd or unreasonable results).

¶ 26. Our conclusion that Koenig was not required to obtain the order referenced in Wis. Stat. § 801.02(5) within thirty days of the panel's decision is also supported by our decision in *State ex rel. DNR v. Walworth County Board of Adjustment*, 170 Wis. 2d

406, 489 N.W.2d 631 (Ct. App. 1992). There, we described § 801.02(5) as setting forth two procedures for initiating a certiorari action: a complaint procedure and a writ procedure. *Walworth Cty.*, 170 Wis. 2d at 415. We further stated the statute allows the complaint procedure to be pursued by two different methods: the complaint and summons method, and the complaint and order method. *Id.* at 415–16. We then explained:

> The commencement of the certiorari appeal is measured differently in the complaint procedure than it is in the writ procedure. *If an appellant employs the complaint procedure, commencement of the appeal is measured by the act of filing, provided that the complaint and its accompanying document are served on the respondent within the appropriate time period.* In contrast, if an appellant employs the writ procedure, commencement of the appeal is measured by the act of serving the original writ, provided that a copy of the writ is filed "forthwith." *When combined with the thirty-day commencement requirement in sec. 59.99(10), Stats., sec. 801.02(1) and (5), Stats., indicates that a complaint must be filed within thirty days,* whereas a writ must be served within thirty days.

*Id.* at 416 (emphasis added). This summary clarifies that it is the filing of a complaint that matters for purposes of determining whether a certiorari action was commenced within the applicable time limitation, not the obtaining and serving of an order.

¶ 27. DHS also argues the original order Koenig obtained from the circuit court was defective because it did not specify a time period for service. Be that as it may, Koenig later obtained an amended order that required service by May 16, 2014. DHS argues this amended order was untimely because it was not ob-

tained within thirty days after Koenig received the administrative panel's decision. However, we have already concluded Koenig was not required to obtain the order referenced in Wɪs. Sᴛᴀᴛ. § 801.02(5) within that thirty-day period. The amended order was therefore timely.

*3. Koenig properly named DHS as the defendant.*

¶ 28. DHS also argues Koenig should have named the administrative panel, rather than DHS, as the defendant in this action. DHS notes that a petition for a writ of certiorari "must go to the board or body whose acts are sought to be reviewed, otherwise the court cannot obtain jurisdiction either of the subject matter or of the persons composing such board or body." *State ex rel. Kulike v. Town Clerk of Lebanon*, 132 Wis. 103, 105, 111 N.W. 1129 (1907). DHS asserts that, in this case, Koenig is seeking review of the administrative panel's decision, not any action by DHS. Conversely, Koenig argues, and the circuit court agreed, that the decision on review is the initial finding of maltreatment made by DHS.

¶ 29. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 68.12(2) expressly states that the decision of an administrative panel following a hearing conducted under Wɪs. Sᴛᴀᴛ. § 68.11 is a "final determination." Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 68.13(1), in turn, states that "[a]ny party to a proceeding resulting in a final determination may seek review thereof by certiorari[.]" Under these statutes, the decision subject to certiorari review is the final determination made by the administrative panel. Koenig conceded as much in her complaint, stating, "Pursuant to Wɪs. Sᴛᴀᴛ. § 68.13, petitioner seeks judicial review by certiorari of the panel's determination."

¶ 30. Although we conclude the decision on review is that of the administrative panel, we nevertheless reject DHS's argument that Koenig should have named the panel, rather than DHS, as a defendant. We have previously stated there are two exceptions to the general rule that a petition for certiorari must go to the body whose acts are being reviewed: "(1) 'where specially provided by statute, or in particular cases of necessity, as where the board or body whose acts are sought to be reviewed is not continuing or has ceased to exist,' and (2) when service requirements are ambiguous and there is an absence of a clear statutory identity of the board or body[.]" *Acevedo v. City of Kenosha*, 2011 WI App 10, ¶ 17, 331 Wis. 2d 218, 793 N.W.2d 500 (2010) (citations omitted). Both of these exceptions apply here. WISCONSIN STAT. § 68.11(2) states, "The municipality shall provide an impartial decision maker, who may be an officer, committee, board, commission or the governing body who did not participate in making or reviewing the initial determination, who shall make the decision on administrative appeal." Pursuant to this statute, a three-person administrative panel was convened to hear Koenig's appeal. However, the panel did not have a formal name or a clear statutory identity. It does not appear to have been a continuing entity. Under these circumstances, DHS does not explain how Koenig possibly could have named the panel as a defendant.

¶ 31. Moreover, the panel was formed and carried out its responsibilities under DHS's authority, and DHS controlled the appellate process until the panel was convened. In addition, one of the chief arguments Koenig made on certiorari—that DHS violated her due process rights by failing to finish its paper review of

the initial child maltreatment determination within fifteen days—related exclusively to DHS's conduct. On these facts, we conclude Koenig properly sued DHS, rather than the panel.

¶ 32. Alternatively, DHS argues that, even if the panel was not the proper defendant, Koenig should have sued Pierce County, instead of DHS. DHS asserts it is "not a separate legal entity capable of being sued." In support of this proposition, DHS cites three federal district court opinions and one authored, unpublished Wisconsin Court of Appeals opinion. However, none of these opinions are binding precedent. *See* Wis. Stat. Rule 809.23(3)(b) (unpublished opinions not binding authority); *State v. Wood*, 2010 WI 17, ¶ 18, 323 Wis. 2d 321, 780 N.W.2d 63 (federal district court cases not binding authority on Wisconsin courts).

¶ 33. Further, the opinions cited by DHS do not persuade us that, under the specific circumstances of this case, DHS could not be sued. The federal cases DHS cites involved 42 U.S.C. § 1983 claims in which a police department, a district attorney's office, and a sheriff's department, respectively, were alleged to be civilly liable for violating citizens' constitutional rights. *See Grow v. City of Milwaukee*, 84 F. Supp. 2d 990, 993 (E.D. Wis. 2000), *disapproved of on other grounds by Driebel v. City of Milwaukee*, 298 F.3d 622 (7th Cir. 2002); *Buchanan v. City of Kenosha*, 57 F. Supp. 2d 675, 676–77 (E.D. Wis. 1999); *Abraham v. Piechowski*, 13 F. Supp. 2d 870, 871–73 (E.D. Wis. 1998). The court of appeals case cited by DHS involved a small claims action against a police department for the return of property taken during the execution of a search warrant. *Vitrano v. Milwaukee Police Dep't*, No. 2010AP1987, unpublished slip op. ¶ 1 (WI App Jan. 11, 2011). None of these cases involved certiorari

actions challenging decisions made by municipal departments. They are therefore inapt and unpersuasive.

4. *The complaint, order, and amended order were timely served on the Pierce County clerk.*

¶ 34. Finally, DHS argues Koenig failed to timely serve either the chairperson of the Pierce County board or the county clerk, as required by Wis. Stat. § 801.11(4)(a)1. We disagree.

¶ 35. As discussed above, Koenig timely commenced her certiorari action by filing her complaint on March 7, 2014, which was within thirty days of receipt of the administrative panel's final decision. The original order did not contain a time limit for service. However, Koenig served the complaint and original order on the Pierce County clerk on April 28, 2014, which was less than ninety days after the complaint was filed. *See* Wis. Stat. § 801.02(1) (service of summons and complaint must be "made upon the defendant under this chapter within 90 days after filing"). Koenig then obtained an amended order on April 29, 2014, which set a May 16, 2014 deadline for service. Koenig served the amended order on the county clerk on April 30, 2014. Thus, under either the statutory deadline or the time period set forth in the amended order, Koenig timely served the county clerk.

*Due process*

¶ 36. DHS next argues the circuit court erred by concluding Koenig's due process rights were violated when: (1) DHS failed to complete its paper review of the initial determination of child maltreatment within

fifteen days after it received Koenig's appeal request, contrary to WIS. STAT. § 68.09(3); and (2) the administrative panel refused to allow Koenig to cross-examine DHS's medical expert about other cases in which he had testified. We agree with the circuit court that DHS's failure to comply with the fifteen-day deadline for completing the paper review violated Koenig's right to due process, and that the violation warrants reversal of the panel's decision. Accordingly, we need not address the panel's decision not to allow cross-examination of DHS's medical expert. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (appellate courts not required to address every issue raised when one issue is dispositive).

¶ 37. WISCONSIN STAT. § 68.08 allows any person aggrieved by a written or oral decision of a municipality[7] to request a review of that determination within thirty days. Koenig was notified of DHS's initial determination of child maltreatment on June 24, 2013. On July 12, 2013, she timely requested review of that decision. DHS received Koenig's request on July 15. It ultimately decided to conduct a paper review of the initial determination, under WIS. STAT. § 68.09. Section 68.09(3) states that the municipal authority "shall review the initial determination within 15 days of receipt of a request for review." DHS did not complete its paper review of the initial determination until

---

[7] For purposes of WIS. STAT. ch. 68, "municipality" includes:

any county, city, village, town, technical college district, special purpose district or board or commission thereof, and any public or quasi-public corporation or board or commission created pursuant to statute, ordinance or resolution, but does not include the state, a state agency, a corporation chartered by the state or a school district as defined in s. 115.01 (3).

WIS. STAT. § 68.04.

October 31—long after the fifteen-day deadline had elapsed. The circuit court concluded, and we agree, that DHS's failure to comply with the fifteen-day deadline violated Koenig's right to due process.

¶ 38. DHS argues WIS. STAT. § 68.09(3) merely requires a municipality to begin the review process within fifteen days, not to issue a decision within fifteen days. This interpretation is unreasonable. There would be little point in requiring a municipality to review an initial determination within fifteen days if it could then postpone issuing its decision until some unspecified date of its own choosing.

¶ 39. DHS also argues the fifteen-day deadline in WIS. STAT. § 68.09(3) is directory, rather than mandatory. " '[A]bsent a mandatory requirement, administrative delay in issuing a decision is not reversible error' on due process grounds." *Seebach v. PSC*, 97 Wis. 2d 712, 729, 295 N.W.2d 753 (Ct. App. 1980) (quoting *Chicago & N. W. R.R. v. LIRC*, 91 Wis. 2d 462, 480, 283 N.W.2d 603 (1979)). Whether a statutory time limit is mandatory or directory is a question of law that we review independently. *See State ex rel. St. Michael's Evangelical Lutheran Church v. DOA*, 137 Wis. 2d 326, 336, 404 N.W.2d 144 (Ct. App. 1987) (citing *Karow v. Milwaukee Cty. Civil Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978)).

¶ 40. As noted above, the relevant statutory language provides that a municipality "shall review" an initial determination within fifteen days of receipt of a request for review. WIS. STAT. § 68.09(3). Generally, the word "shall" is presumed mandatory when it appears in a statute. *Karow*, 82 Wis. 2d at 570. This is particularly true where, as here, the legislature used both

"shall" and "may" in the same statutory section. *See* § 68.09(3) (municipality "shall" review initial determination within fifteen days; time for review "may" be extended by agreement of the parties). "When the words 'shall' and 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Karow*, 82 Wis. 2d at 571.

¶ 41. However, when used in a statute imposing a time limit, the word "shall" can nevertheless be construed as directory if necessary to carry out the legislature's clear intent. *Id.* DHS contends the legislature clearly intended the fifteen-day time limit in WIS. STAT. § 68.09(3) to be directory because the statute allows the time for review to be extended by agreement of the parties. We are not persuaded. That the legislature decided to allow the time limit for review to be extended when both parties agree to do so does not indicate a clear legislative intent that the time limit should be directory when the parties do not so agree.[8]

[8] DHS also suggests that Koenig agreed to an extension of the fifteen-day time limit by requesting additional time to review the records provided by DHS and submit written evidence and argument. DHS neglects to point out, however, that Koenig's request for additional time was caused by DHS's failure to provide Koenig with unredacted records in a timely fashion. Moreover, by the time Koenig made the request for additional time, the fifteen-day deadline had long since passed. Further, after DHS informed Koenig it was treating her request for additional time as an extension, Koenig specifically asserted that "the time for review should [not] have been extended beyond the 15 days called for in the statute in the first instance" and that she was "not conceding or stipulating that [DHS] has followed the proper procedures in providing

¶ 42. DHS also argues Wis. Stat. § 48.981(3)(c)5m. "expressly recognize[s] that an administrative appeal under [Wis. Stat.] ch. 68 may need to be held in abeyance while a related criminal investigation is ongoing." The operative version of § 48.981(3)(c)5m. provided:

> If the county department . . . determines under subd. 4. that a specific person has abused or neglected a child, the county department, . . . within 15 days after the date of the determination, shall notify the person in writing of the determination, the person's right to appeal the determination and the procedure by which the person may appeal the determination, and the person may appeal the determination in accordance with the procedures established by the department[9] under this subdivision. The department shall promulgate rules establishing procedures for conducting an appeal under this subdivision. *Those procedures shall include a procedure permitting an appeal under this subdivision to be held in abeyance pending the outcome of any criminal proceedings or any proceedings under s. 48.13 based on the alleged abuse or neglect or the outcome of any investigation that may lead to the filing of a criminal complaint or a petition under s. 48.13 based on the alleged abuse or neglect.*

(Emphasis added.) DHS argues the italicized language demonstrates the legislature recognized that a paper review of a child maltreatment determination may extend beyond the fifteen-day deadline set forth in Wis. Stat. § 68.09(3). DHS also argues § 48.981(3)(c)5m. expressly permitted it to hold Koenig's appeal of the

---

review" and was not "waiving any claims or defenses." Under these circumstances, we reject DHS's argument that Koenig agreed to an extension of the fifteen-day time limit.

[9] In Wis. Stat. ch. 48, "department" means the Wisconsin Department of Children and Families. Wis. Stat. § 48.02(4).

child maltreatment determination in abeyance pending the outcome of any criminal proceedings or proceedings under Wis. Stat. § 48.13 (CHIPS[10] proceedings).

¶ 43. We disagree with DHS's interpretation of Wis. Stat. § 48.981(3)(c)5m. While DHS contends that statute shows that the legislature did not intend the fifteen-day time limit in Wis. Stat. § 68.09(3) to be mandatory, we conclude it instead demonstrates that the legislature intended to create a limited exception to the time limit under certain circumstances, provided that certain procedures were followed. To that end, § 48.981(3)(c)5m. expressly directs the Department of Children and Families to promulgate procedures for holding appeals of child maltreatment proceedings in abeyance pending the outcome of criminal or CHIPS proceedings. However, there is no evidence in the record that the Department of Children and Families has actually done so.

¶ 44. DHS cites a memo issued by the Department of Children and Families as evidence that such procedures were promulgated. *See* Department of Children and Families, Memo Series CFS 98–14, Appeal Process for Substantiated Maltreatment Findings (Oct. 13, 1998), *available at* http://dcf.wisconsin.gov/memos/num_memos/1998/98–14.htm (last visited Jan. 13, 2016). However, the memo merely states that a county may not need to offer an opportunity to appeal a child maltreatment determination "[i]f a CHIPS petition has been filed" or "[i]f a criminal court proceeding has been initiated[.]" *See id.* It does not set forth any actual

---

[10] "CHIPS" is an acronym for the term "child in need of protection or services." *State v. Bobby G.*, 2007 WI 77, ¶ 8 n.7, 301 Wis. 2d 531, 734 N.W.2d 81.

procedures for holding an appeal from a child maltreatment determination in abeyance. Because it appears no procedures were promulgated, they could not have been followed in Koenig's case. We therefore reject DHS's argument that WIS. STAT. § 48.981(3)(c)5m. mandates a directory construction of the fifteen-day time limit in WIS. STAT. § 68.09(3) under the circumstances presented here.

¶ 45. In addition to the considerations discussed above, case law directs us to consider the following factors when determining whether a statutory time limit is mandatory or directory: (1) the purpose of the statute; (2) the statute's history; (3) whether a penalty or prohibition is imposed for the violation of the time limit; and (4) the consequences of interpreting the statutory time limit as either mandatory or directory, including whether the failure to act within the time limit works an injury or wrong. *See Karow*, 82 Wis. 2d at 572; *Kruczek v. DWD*, 2005 WI App 12, ¶ 14, 278 Wis. 2d 563, 692 N.W.2d 286. In the instant case, the majority of these factors support construing the fifteen-day time limit for review of DHS's initial determination as mandatory.

¶ 46. First, it is undisputed that the purpose of the procedures outlined in WIS. STAT. ch. 68 is to "afford a constitutionally sufficient, fair and orderly administrative procedure and review in connection with determinations by municipal authorities which involve constitutionally protected rights of specific persons which are entitled to due process protection under the 14th amendment to the U.S. constitution." *See* WIS. STAT. § 68.001. Construing the fifteen-day time limit in WIS. STAT. § 68.09(3) as mandatory furthers this purpose by

ensuring that the concerns of parties aggrieved by municipalities' decisions are addressed in a timely manner.

¶ 47. Second, neither party cites anything in the history of Wis. Stat. § 68.09(3) that sheds light on whether the legislature intended the fifteen-day time limit to be mandatory or directory. Our own research into the statute's history has not revealed anything relevant to this issue.

¶ 48. Third, Wis. Stat. § 68.09(3) does not contain any penalty for failure to comply with the fifteen-day time limit, nor does it expressly restrict a municipality's ability to act if it fails to comply with the time limit. This factor supports construing the time limit as directory. However, "the omission of a prohibition or a penalty is only one factor to be considered in the analysis of whether the legislature intended [a] provision to be mandatory or directory." *Karow*, 82 Wis. 2d at 572. In *Karow*, for example, our supreme court concluded a statutory time limit was mandatory despite the statute's failure to expressly provide a prohibition or penalty for noncompliance. *See id.* at 572–73.

¶ 49. Fourth, we must examine the consequences of construing the time limit as either mandatory or discretionary. In making this assessment, we must consider whether a municipality's failure to act within the time limit works an injury or wrong. *See id.* at 572. "[A] time limit may be construed as directory when allowing something to be done after the time prescribed would not result in an injury." *Id.* Conversely, "where the failure to act within the statutory time limit does work an injury or wrong, this court has construed the time limit as mandatory." *Id.*

¶ 50. *Karow* directs that we consider the specific facts before us in determining whether DHS's delay worked an injury or wrong. Here, DHS's failure to comply with the fifteen-day time limit set forth in Wɪs. Sᴛᴀᴛ. § 68.09(3) harmed Koenig. It is undisputed that Koenig had a constitutional property interest in her child care license. DHS notified Koenig of its initial maltreatment determination on June 24, 2013. On the same date, DHS notified the Department of Children and Families, which revoked Koenig's license on July 1, 2013. In September 2013, the Department of Children and Families stipulated the revocation was due solely to the initial maltreatment determination. The Department of Children and Families also stipulated that, if that finding were reversed, it "would not proceed" with the revocation of Koenig's license. DHS did not complete its paper review of the initial maltreatment determination until October 31, 2013.

¶ 51. Because her license was revoked, Koenig was legally prohibited from providing child care for more than three children while she waited for DHS to complete its paper review. *See* Wɪs. Sᴛᴀᴛ. § 48.65(1). DHS's failure to complete the paper review within the statutory deadline therefore caused Koenig financial harm because, while she awaited DHS's decision, she was not able to care for as many children as she had before her license was revoked, and, accordingly, she received less income. DHS's failure to comply with the fifteen-day time limit also resulted in ongoing injury to Koenig's reputation. Moreover, even though DHS ultimately upheld the initial maltreatment determination, its failure to complete the paper review within the

statutory timeframe left Koenig in a prolonged state of uncertainty regarding the status of her license and the viability of her business.[11]

¶ 52. The harm Koenig suffered due to DHS's failure to comply with the fifteen-day time limit is similar to the harm sustained by the plaintiff in *Karow*. Karow, a Milwaukee County sheriff's deputy, was suspended without pay after a complaint was filed against him by the Milwaukee County sheriff. *Karow*, 82 Wis. 2d at 566–67. A hearing was scheduled before the Milwaukee County Civil Service Commission, but it was later postponed over Karow's objection. *Id.* at 567–68. Karow then petitioned the circuit court for a writ of mandamus, arguing WIS. STAT. § 63.10(2) required the Commission to hold the hearing within three weeks after the complaint was filed. *Karow*, 82 Wis. 2d at 568. Our supreme court agreed with Karow that the statutory time limit for holding the hearing was mandatory. *Id.* at 573. The court explained, "As a result of the charges and suspension Karow is not

---

[11] DHS argues its failure to comply with the statutory time limit did not harm Koenig because DHS did not directly revoke her child care license. This argument is untenable. Although DHS did not directly revoke Koenig's license, the undisputed evidence shows that its initial maltreatment determination was the sole basis for the Department of Children and Families' revocation decision.

DHS also argues the delay did not harm Koenig because she "agreed to voluntarily close her daycare facility pending the outcome of the criminal investigation." The record indicates that, on May 3, 2013, Koenig signed an agreement to voluntarily close her child care center "during the current investigation by Pierce County Department of Human Services —Child Protective Services and the River Falls Police Department." However, Koenig was allowed to reopen her day care as an unlicensed facility on May 14, 2013, over one month before DHS issued its initial maltreatment determination.

working and is not being paid." *Id.* The court went on to state, "[T]here is a public interest which is shared by the employee in the employee not being wrongly deprived of his or her livelihood and not suffering injury to reputation on the basis of charges which might prove unfounded. This interest can be protected only by holding a hearing promptly." *Id.*

¶ 53. In contrast, the supreme court concluded a statutory time limit was directory in *St. Michael's Evangelical Lutheran Church*, in part because the nursing home under investigation in that case was allowed to continue operating pending a hearing and therefore suffered no economic loss as a result of the delay. *See St. Michael's Evangelical Lutheran Church*, 137 Wis. 2d at 337–38. Similarly, in *Kruczek*, we concluded an administrative regulation requiring the Wisconsin Department of Workforce Development to issue a final order within thirty days in an appeal from a debarment decision was directory. *Kruczek*, 278 Wis. 2d 563, ¶¶ 1, 11, 23. We observed that Kruczek, a contractor who had been debarred from bidding on state and municipal projects, suffered no injury as a result of the delay because he "was not prohibited from working or bidding on projects pending the determination by DWD." *Id.*, ¶ 21. Conversely, Koenig suffered economic and reputational harm as a result of DHS's failure to comply with the fifteen-day time limit in Wis. Stat. § 68.09(3).

¶ 54. DHS asserts there are "significant consequences of holding that the 15–day deadline is an inflexible, mandatory timeline that results in a due process violation." DHS argues:

> A determination of child maltreatment, especially one involving a caregiver, furthers an important commu-

nity safety goal—protecting children from abuse. To deprive a community of this protection based on a delay in processing paperwork for a paper review of a child maltreatment determination would run contrary to the entire purpose of chs. 48 & 68. This is particularly true for small communities with limited resources where investigations of this nature may consume significant public resources and strict compliance with the 15–day time period may be difficult to meet.

However, as Koenig points out, a municipality may elect not to be governed by WIS. STAT. ch. 68, either in whole or in part, "by an ordinance or resolution which provides procedures for administrative review of municipal determinations." *See* WIS. STAT. § 68.16. Thus, if a municipality believes compliance with the fifteen-day deadline in WIS. STAT. § 68.09(3) is not feasible, it may adopt an ordinance or resolution designating a different time limit. Because Pierce County has failed to do so, DHS is bound by the time limit set forth in the statute.

¶ 55. After considering all of the foregoing factors, we conclude the fifteen-day time limit in WIS. STAT. § 68.09(3) is mandatory, not directory. In particular, the purpose of WIS. STAT. ch. 68, the consequences of a directory interpretation, and the fact that subsection (3) uses both "shall" and "may" convince us a mandatory construction is warranted. In any case where a person with a child care license has it revoked due a child abuse allegation, timeliness in resolving the appeal is of the essence. A loss of income and reputation as a result of that revocation are very foreseeable and likely. Consistent with the purpose of ch. 68, the legislature chose fifteen days as a reasonable time to

review a child maltreatment determination. The Department of Children and Families could have promulgated a procedure providing for a different time period in cases where criminal or CHIPS proceedings are pending, but it did not. We therefore conclude DHS's failure to comply with the fifteen-day time limit violated Koenig's right to due process. *C.f. Seebach*, 97 Wis. 2d at 729 (quoting *Chicago & N. W. R.R.*, 91 Wis. 2d at 480) (" '[A]bsent a mandatory requirement, administrative delay in issuing a decision is not reversible error' on due process grounds."). Accordingly, DHS failed to act according to law when rendering its decision. *See Warren*, 219 Wis. 2d at 628–29.

¶ 56. The circuit court determined DHS's violation of Koenig's due process rights mandated reversal of the administrative panel's decision. DHS argues that, even if Koenig's rights were violated, the proper remedy is a remand for a new hearing.

¶ 57. When reviewing a municipality's decision under Wis. Stat. ch. 68, a circuit court has discretion to determine the proper remedy. *See* Wis. Stat. § 68.13(1) ("The court may affirm or reverse the final determination, or remand to the decision maker for further proceedings consistent with the court's decision."). DHS conceded during oral argument in the circuit court that outright reversal is appropriate when a due process violation cannot be cured on remand. *See Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, ¶ 12 n.5, 337 Wis. 2d 484, 805 N.W.2d 127. The circuit court responded, "One of my findings is the 15–day time limit was mandatory. [It was] not observed. I don't know how remand allows the panel to correct the fact this lady didn't get her hearing." We conclude the court properly exercised its discretion in

this regard. At this point, there is no way DHS can cure the harm Koenig sustained as a result of its failure to timely complete the paper review of the initial maltreatment determination. We therefore affirm the circuit court's judgment reversing the administrative panel's decision.

*By the Court.*—Judgment affirmed.